# Buckholder *against* Sigler.

If the owner of a tract of land purchase a small piece of land adjoining it for the purpose of using it in connection with the larger tract, he thereby makes it a part of the whole; and a levy and sale by the sheriff of the tract of land, without any description of the part purchased, will convey the whole to the purchaser.

If a small piece of land be purchased with the intention of overflowing it by the erection of a dam, and it remains in the enclosure of the vendor for a period of more than 21 years, without any other positive act of adverse possession, the non-user of the vendee will not deprive him of his title and vest it in the vendor by force of the Statute of Limitations.

ERROR to the Common Pleas of *Mifflin* county.

[Buckholder v. Sigler.]

This was an action on the case for a nuisance by Adam Sigler against Joseph Buckholder, for damming the water and flowing it back upon the plaintiff's land.

George Sigler, under whom the plaintiff claims, and Caleb Parshall, under whom the defendant claims, were the original owners of the adjoining tracts of land: in 1785, Sigler conveyed to Parshall " one acre of ground on Long Meadow run, for the use and benefit of erecting a mill-dam, adjoining the land of Parshall, to be surveyed and laid off on each side of the run, where it may appear to be the most convenient to erect a mill-dam as aforesaid, together with all the rights and privileges thereunto belonging." It appeared that a dam was erected some time after, and remained in use until about 1801, when it was carried away. In 1822 the land of Caleb Parshall was levied by the sheriff as " 200 acres of land, more or less, in Decatur township, about 75 acres of which are cleared, &c., adjoining lands of Adam Sigler, George Sigler, and others, &c.," and was subsequently sold and conveyed to Dr Jos. B. Ard, who in 1841 conveyed to the defendant Buckholder, who rebuilt the dam, which was the subject of the plaintiff's cause of action. It appeared in evidence that the acre of land conveyed by Sigler to Parshall, and which was covered with water by Buckholder's dam, had always remained in the enclosure of Sigler, and that he and those claiming under him had always mowed it and pastured it; but that they repeatedly said the land belonged to Parshall, and, after it was sold as his property, that it belonged to Dr Ard. A number of bills of exception were taken to the opinion of the court admitting and rejecting evidence, but they are sufficiently stated in the opinion of the court.

The opinion of the court below, given to the jury in answer to points put by the counsel of the respective parties, was, that the sheriff's deed to Dr Ard did not pass the title of Parshall to the acre of land, because it was a separate purchase, held by a different title from the farm, and was not included by the description in the sheriff's levy; and if this were so, that the declarations of Sigler, made at different times, that the land belonged to Parshall, Ard and Buckholder, would not give them title to it, unless they had it otherwise. With this direction as to the law of the case, the court submitted the facts to the jury. This opinion was the subject of the errors assigned.

*Mr Hale* and *Mr Benedict,* for plaintiff in error, argued that actual adverse and hostile possession were essential to sustain a title upon the Act of Limitations; and that although the plaintiff's possession may have been actual, it was not adverse and hostile, but always in subordination to and in acknowledgment of the defendant's right. 2 *Watts* 27; 6 *Serg. & Rawle* 21; 1 *Rawle* 218; 1 *Whart.* 426; 4 *Watts* 322.

[Buckholder v. Sigler.]

*Mr Candor* and *Mr Parker*, contra, contended that the undisturbed possession of the plaintiff for thirty-five years raised the legal presumption of a grant; and when that presumption was fortified by the fact that the purposes for which the land had been purchased had been abandoned since 1801, that presumption amounted to a legal conclusion.   17 *Serg. & Rawle* 383; 5 *Watts* 308; 5 *Whart.* 584. 597; 16 *Wend.* 534; 4 *M'Cord* 96; 32 *E. C. L.* 535; 4 *Whart.* 259; 10 *Watts* 261.

The opinion of the Court was delivered by

KENNEDY, J. — The plaintiff and defendant in error are the respective owners of two adjoining tracts of land lying on the same stream of water.   The tract belonging to the plaintiff lies on the stream below that of the defendant, upon which the former erected a mill-dam across the stream; which, as the defendant alleges, caused the water of the stream to overflow some portion of his land above, for which he brought this suit.   Twelve errors have been assigned, many of which involve the same question; hence a notice of them all will be wholly unnecessary.   And besides, many of them appear to have no connection with the merits of the case or the real ground of controversy in it.   Besides the bills of exceptions to evidence, there are but two questions presented; the first of which is, did the sheriff's levy and sale of Caleb Parshall's land to Dr Ard include the acre of land purchased by Parshall of George Sigler and wife ?   And if the levy and sale did include it, did the fact of Parshall, and those claiming the land from him afterwards, ceasing to use it for the purpose mentioned in the deed of conveyance from Sigler to Parshall, for a space of twenty-one years or upwards, without any express assertion of right or claim to the acre by George Sigler or Adam Sigler, the defendant in error, who now claims it under a right derived from the said George his father, or the performance of any act by them or either of them, inconsistent with the right claimed by the plaintiff in error, bar the latter of his right thereto for the purpose expressed on the face of the deed to Parshall ?   If these two questions had been presented to the jury under a proper direction from the court, and the jury from the evidence had been of opinion that no other part of the land claimed by the plaintiff below than the acre had been inundated or overflowed, in any way, from the erection of the defendant's dam, they would have had no difficulty in finding a verdict for him.   The direction of the court on these questions will, therefore, be examined and discussed, after taking a passing notice of the bills of exceptions taken by the defendant's counsel below to evidence.

The first bill of exception is to the rejection of the articles of agreement between Joseph B. Ard and John C. Sigler, for the purchase of the land upon which the dam complained of was erected, of which the one acre is claimed by the plaintiff in error

to be a part, which were offered to be read in evidence by the defendant below, in connection with other evidence mentioned, to show that the plaintiff below admitted, about the time the articles of agreement were made, that the one acre belonged to Ard.   This evidence was undoubtedly relevant to the issue, and ought to have been admitted.   Why it was rejected does not appear, but it may be presumed that it was upon the ground that Dr Ard, as the court conceived, did not purchase the acre of land at the sheriff's sale, in which it will be shown in the sequel that the court was mistaken.

We also think that the court erred in rejecting the evidence mentioned in the second bill of exception taken by the defendant below.   It is of a similar nature with the evidence mentioned in the defendant's first bill, and offered for a like purpose.

The defendant's third bill of exception is to the admission of the testimony of Elizabeth Sigler, a witness produced on the part of the plaintiff.   We, however, think that this exception cannot be sustained.   It was certainly, in some degree, pertinent to the issue, and indeed tended, in some slight measure, to repel some of the defendant's testimony.

We come now to the two questions of fact mentioned above, and to notice the mistake or error into which the court fell in regard to them.   As to the first, that is, whether the acre of land, purchased by Caleb Parshall of George Sigler and wife, was included in the levy and sale of the two hundred acres, more or less, sold by the sheriff to Dr Joseph B. Ard, the court in their charge to the jury make no question about it, but say in positive terms that " the levy and sheriff's deed do not describe this acre; that Caleb Parshall, through whom Ard acquired title, held it by a separate conveyance, and not by the same title that he held the tract on which the dam is built; and not being included in the levy, no title to the one acre of land could pass by that deed." Now, although it is true that Caleb Parshall held the one acre by a separate deed and title from that under which he held the land on which the dam was erected, yet it is perfectly manifest from the face of the deed by which he held the one acre, that it not only adjoined the land whereon he afterwards built the dam, but that he purchased it expressly for the purpose of uniting it therewith, and improving and occupying the whole together as one tract, by building a mill thereon, with a dam across the stream of water which passed through both parcels of land.   And the evidence showed, beyond all possibility of contradiction, that he did so occupy the whole as one entire tract, by improving and using it in the manner and for the purpose just mentioned.   Thus the two parcels of land, by being united together as one, became more valuable by reason of their being made a suitable site for a mill, than they were or could have been made, taken and occupied separately as two parcels.   It would therefore have been wrong

[Buckholder v. Sigler.]

in the sheriff to have levied on and sold them otherwise than as one entire tract, because it would obviously have been a prejudice to the owner by depreciating their value, and possibly to his creditors.   It is fair then to presume that the sheriff intended to do his duty by levying on and selling the whole together as one entire tract; and that it was so considered by all concerned at the time that he had done so, we have every reason to conclude; otherwise the court would, in all probability, have been moved to set the levy and sale aside.   This is the conclusion to which the court ought to have instructed the jury it was their duty to come on this part of the case, unless it had clearly appeared from the terms of the levy that the one acre was intended to be excluded, or that it could not be included consistently with the terms of the levy.   But it is very clear this is not the case; on the contrary, the terms of the levy are such as may well include the acre.   It is in the following words: " Levied on a tract of land in Decatur township, containing two hundred acres *more* or *less*, about seventy-five acres of which are cleared, with a log house and barn thereon erected, *bounded* by lands of *Adam Sigler*, George Sigler, and others, the property of Caleb Parshall; so answers Samuel Edmiston, sheriff."   Thus, it is evident there are no words in the levy which exclude the one acre; nor was it necessary, in order to include it, that it should be specifically described or mentioned by referring to the deed or title under which Parshall held it, as the court seem to indicate in their charge to the jury, more than it was that there should have been a reference to the deed or title under which the defendant in the execution held the residue of the land, which is not the case.   As he occupied and used both parcels as one tract only, and never otherwise, according to all the evidence, it was unquestionably sufficient, in order to include both, for the sheriff to describe them generally as one tract of land in the manner he has done in his levy.   We therefore think that the court erred in instructing the jury that the one acre of land was not included in the sheriff's levy and sale to Dr Ard.

The second question now presents itself, whether the court were justified, from the evidence, in leaving it to the jury to decide, and in instructing them, that if they were satisfied that Sigler held the acre of land adversely to the right of Parshall, claiming all the advantages of the stream through his land during the non-user of the same by Parshall, such holding and possession, uninterrupted and continued for twenty-one years from the time of the non-user of the original dam by Parshall, would give Sigler a title to the interest conveyed to and held by Parshall, whether Parshall held a fee simple in the acre of land, or a right merely to overflow the acre by backing the water on it; and having thus acquired a title by non-user, his subsequent admissions and declarations would not divest him of it, if made in ignorance of his rights.   It was certainly a mistake in the court to view the right

of Parshall in respect to the one acre of land as a mere easement or privilege to dam the water of the stream on his other land, so as to be enabled, with impunity, to overflow it with water. He unquestionably was invested with a right to a fee simple estate in it, and the doctrine of non-user had, therefore, properly speaking, no application to it. But had the right of Parshall been merely that of an easement, even non-user for twenty-one years would not necessarily have raised a presumption of its extinguishment, unless there had been, during the interim, some act done by Sigler on the land charged with the easement inconsistent with or adverse to the existence of the right. But of such act I can perceive no evidence, though I have looked with no little care for it. The acre of land was enclosed with other land belonging to George Sigler at the time he sold it to Parshall, and continued ever afterwards to be enclosed as before, and to be used and occupied by Sigler as before, excepting that part which was covered with water after Parshall built his dam; and during the time it stood, Sigler never pretended to occupy or use it, except in subordination to the right and title of Parshall and those claiming from him. On the contrary, he uniformly, and upon all occasions, as often as the acre of land was spoken of or mentioned, acknowleged that it belonged to them until some short time before the commencement of this action, when it would seem he was advised that the right of Parshall to the acre of land and of those claiming from him had become extinct by twenty-one years' non-user on their part. But it is not a mere easement or incorporeal right, or right to back the water of the stream upon the land of the defendant in error, that the plaintiff in error claims; he claims the fee simple estate in the land itself; and, as the owner thereof, the right to back the water upon it or not, as he pleases. His not using it for this purpose cannot, therefore, affect his right to it, as long as he remains seised thereof; nor can he be regarded as deprived of his right, unless he or those from whom he claims have suffered Sigler to take a possession of the acre of land adverse to his right, and to occupy and use it in a manner wholly inconsistent with the object and design of the purchase of it by Parshall, as expressed in the deed of conveyance thereof made to Parshall for a space of twenty-one years or upwards previously to the erection of the dam by the plaintiff in error.

It is proper to observe here that, by the terms of the deed of conveyance from Sigler to Parshall, the acre of land was not purchased originally by the latter of the former for agricultural purposes, or with a view by Parshall to add it to his adjoining land, owned previously, in order to use the whole as a farm; but for the purpose of building a mill, and using the water of the stream which passed through it in such a way as to propel the machinery of the mill, which it was believed could only be effected by erecting a dam that would back the water of the stream at least upon

some, if not upon the whole of the acre of land.   In order, however, to use it for this purpose, it was not requisite that Parshall should enclose it with his other land, or that George Sigler, of whom he bought, should thereafter exclude it from his enclosure, or use it differently from what he had previously, so that he did nothing that could interfere with the right of Parshall, and those claiming from him, to use the land so as to have the full benefit of the water, so far as it was necessary, for the purpose of propelling the machinery of the mill when constructed, and as long as it should be kept in operation.   From the evidence it appears that the most of the acre of land, if not the whole of it, was enclosed with other land belonging to George Sigler, when he sold and conveyed it to Parshall; that it was never laid off, even by marking or fixing the boundaries in any way; that Parshall, after his purchase of it, went on and built his mill and dam so as to have the use of the water of the stream for driving his mill; and Sigler during the same time kept the acre of land enclosed with his land as before, and continued to use it for grazing and for meadow, so far as it was not rendered incapable of being used for those purposes by Parshall's dam.   It is perfectly obvious, therefore, that the occupation and use thus made by Sigler of the acre of land after he sold it to Parshall, was in subservience to the right of Parshall, and not adverse thereto.   But, besides, if any possible doubt could exist or be raised that it was otherwise, the repeated declarations and admissions of George Sigler, who sold to Parshall, and again of Adam Sigler, the defendant in error, that the acre of land belonged to Parshall and those claiming it from Parshall, would be even more than sufficient to remove all doubt of the sort.   Parshall having acquired a title to the acre of land by his deed of conveyance from George Sigler, and having built his dam so as to overflow part of the acre at least, thereby obtained the actual possession of it.   But his title thereto being admitted by Sigler, the grantor, gave Parshall the possession, in contemplation of law, without this; so that any *actual possession* had by Sigler, as long as he admitted Parshall, and those deriving their claim thereto from Parshall, to be the owners thereof, must be considered the same as if the actual possession had been in them during all that time.   The possession of the Siglers cannot be considered adverse and hostile under such circumstances.   The observations made by Mr Justice Rogers in *The Union Canal Co.* v. *Young*, (1 *Whart. Rep.* 426–7), and the doctrine there laid down by him in delivering the opinion of this court, are so just, and at the same time so appropriate to this case, that I cannot forbear repeating the same.   There the defendants claimed the possession to have been adverse and hostile, because Mr Young paid the taxes for the property, leased the land without an exception of the part owned by the Company; because the tenant raised a crop of corn for one or two years in the bed of the canal, and because

a fence was removed, and a fence run across the line of the canal : upon which he observes, " I see nothing in any one or all the circumstances adverted to which brings this case within the rule so distinctly laid down in *Hawke* v. *Senseman*, and the other cases cited. Mr Young continued to hold and enjoy the land in the same manner as he had been accustomed to do at the time when the Company were confessedly the owners of the land. There was no open, visible, and notorious change in his conduct which could put the Company on their guard, and make it in proper time their duty to assert their right. On the contrary, from any act of his, they could not have the slightest suspicion that it was his intention to dispute their right. So far from this, he acknowledged their title by a receipt of the 7th May 1821 for ten shares of the Union Canal stock, in lieu of the Delaware and Schuylkill stock." So here Mr Sigler continued, as Mr Young did in the case just referred to, to hold and enjoy the acre of land in the same manner as he had been accustomed to do when Mr Parshall, and those deriving their claim thereto from him, were confessedly the owners of it. There was no open, visible and notorious change in the conduct of either George or Adam Sigler, which could put Parshall or those claiming from him on their guard, and make it, in proper time, their duty to assert their right. On the contrary, from any act of the Siglers, they could not have the slightest suspicion that it was the intention of either George or Adam Sigler to dispute their right. So far from it, George Sigler always admitted the right of Parshall, to whom he sold the acre, and never at any time that we hear of denied it; and Adam Sigler, who succeeded afterwards to the rights of George, uniformly and at all times admitted that it was the property of those who claimed it from Parshall until 1841, when Buckholder, the plaintiff in error, was about buying it of John C. Sigler, who had contracted with Dr Ard for the purchase of it. Elizabeth Sigler, the daughter of the defendant in error and a witness for him, testifies that her father told Buckholder that he intended to hold the acre in dispute by right of possession. But admitting this testimony to be true, and that the defendant in error at that time, 1841, resolved to hold the acre adversely, it amounted to nothing unless he were permitted to do so for a period of twenty-one years. It may, however, be well doubted whether he ever thought of such a thing until after Buckholder had purchased and built his dam; for there is abundant testimony, seemingly, going to show that the defendant in error was frequently present at the building of the dam by Buckholder without making the slightest objection to his doing so, and that, even after it was completed, he said he would have the acre surveyed and laid off by metes and bounds, so that Buckholder should not back the water beyond it upon his land.

It is very manifest, then, from the evidence, that the court were not justified in leaving it to the jury to determine that the plain-

[Buckholder v. Sigler.]

tiff in error, or those from whom he derived his right and claim to the acre of land in dispute, were barred of their right thereto by the operation of the Statute of Limitations; for no part of the evidence did in the slightest degree tend to prove that George Sigler and Adam Sigler, or either of them, had or held an adverse and hostile possession thereof to the right of Parshall and those claiming it from him, for a period of twenty-one years, at any one time after it was conveyed by George Sigler to Parshall.

Judgment reversed, and *venire facias de novo* awarded.