## Wright *versus* The Chestnut Hill Iron Ore Company.

45    475
d 27 SC ¹624

*Sheriff's sale of real estate used and described as a "furnace," includes all the appurtenances.*

1. A sheriff's sale, upon an execution against the owners of iron works, under which was levied several tracts of land, with "the buildings, furnaces, and other improvements thereon erected, known as the Shawnee Iron Works," passes to the purchaser a railroad used in connection with the furnaces and extending therefrom, across intermediate lots of other owners (over which there was a right of way), to river lots of the defendants, where coal and iron ore were usually landed for the use of the furnaces; though the word "appurtenances" was omitted in the levy.

2. Hence, the owner of a lot over which a right of way for the railroad had been granted by a former owner, cannot recover, from the sheriff's vendee, the road bed through his lot, over which the road was constructed.

ERROR to the Common Pleas of *Lancaster county*.

This was an action of ejectment, brought November 10th 1859, by John A. Wright against the Chestnut Hill Iron Ore Company, for so much of two lots of ground as is covered by the railroad which leads from the tunnel head of the Shawnee Iron Works to the Susquehanna river.

The plaintiff claimed title to the lot as the vendee of the sheriff of Lancaster county, by whom they were sold under an execution against Archibald Wright, to whom they had been conveyed, December 10th 1855, by Rhoda, Charles M., and Elizabeth Wright.

The defendants claimed as purchasers at sheriff's sale of the Shawnee Iron Works, under an execution against the owners, Archibald and John Wright.

The Shawnee Furnace came, several years ago, into the possession of Messrs. A. & J. Wright, who reconstructed and extended it, and built a railroad from the tunnel head to the bank of the Susquehanna, a distance of about half a mile, a portion of which was an inclined plane, whereby the coal and ore that were drawn in cars from the river to the commencement of this slope were, by means of a steam-engine, bolted to the trestlework of the plane, carried thence to the top of the stack, into

[Wright *v.* Chestnut Hill Iron Ore Co.]

which they were delivered from the cars. By this railroad, thus operated, all other modes of transportation for the materials used in the manufacture of the iron, except the limestone employed to flux the ore, were superseded. Four hundred and eighty yards of the railroad were on the land belonging to the furnace, two hundred and seventy-five yards on property belonging to John Pusey, two hundred and fifty yards on the two lots before mentioned, held by Archibald Wright under the deed of Rhoda Wright, &c., dated December 10th 1855, and one hundred and five yards on the wharf and property attached to it. All the hauling of the coal and ore to the furnace, and the manufactured iron from the furnace to the wharf on the river, was upon this railroad.

On a judgment obtained against the Messrs. A. & J. Wright, the Shawnee Furnace was, under and by virtue of an execution, duly levied upon, the sheriff describing the furnace property, and setting forth in his return that he levied upon the said furnace, buildings, and improvements, but without using the term *appurtenances.* He afterwards advertised the same for sale, describing in the advertisement the said furnace buildings and the *appurtenances* as the property of the defendants to be sold. At the time of the sale, the defendants, Messrs. A. & J. Wright, being present, the sheriff read this advertisement and description, with the conditions of sale, and proceeded to sell the same according to that description. It was sold to John Fallon, and a deed conveying the property, with the description contained in the advertisement and conditions, was made to him by the sheriff. John Fallon afterward conveyed the same, with the identical description, to Percy Pyne, who conveyed it in like terms to the Chestnut Hill Iron Ore Company, the defendants.

The question was whether the land of the two lots conveyed by Rhoda Wright and others, in the deed of the 10th December 1855, aforesaid, on which the railroad was laid, was conveyed by the sheriff's deed to John Fallon or not. It was agreed that the question should be confined to so much of the said land as constituted the road, or on which the road was founded, with the slopes on either side made by the grading, and it was conceded that, so far as the levy and deed are concerned, this is a question of law. It was embraced in the first point proposed by the defendant, and the counsel having submitted it without discussion, the court (HAYES, P. J.) decided that this land and the railroad passed and were conveyed by the sheriff's sale and deed, not only by the terms of the levy, advertisement, and conditions of sale, but as an incident of the furnace, necessary to its use and operation, according to the design of the Messrs. Wright in their construction of the same.

The learned judge added, that the presence of Messrs. A. &

[Wright *v.* Chestnut Hill Iron Ore Co.]

J. Wright at the sale, and hearing the conditions and advertisement read without objection, confirmed this view of the case, and precluded them from any further exception to the title of an innocent purchaser. The jury were therefore directed, if they believed that they were present at the sale, to render their verdict in favour of the defendants.

The errors assigned were,

1. That the court erred in admitting in evidence, on the part of the defendants, the sheriff's advertisement under Fallon's execution, with proof that John A. Wright and Archibald Wright were both present at the time of the sale, and when the conditions and advertisement were read by the sheriff.

2. In admitting in evidence, on the part of the defendants, the testimony of James A. Richards, that without this railroad, if interrupted, the furnace could not be worked in the way it was designed to be worked when the railroad was constructed.

3. In overruling the plaintiff's offer in evidence of the mortgage of Archibald Wright and John A. Wright to John H. Irvine *et al.*, trustees, dated 4th January 1855, on property therein described: the description being in the identical words of the levy in the execution on Fallon's judgment, recorded in Mortgage Book 13, page 615, and is given to secure various articles of indebtedness, among which are the notes on which Fallon's suit was brought.

4. In charging the jury that this land and the railroad passed and were conveyed by the sheriff's sale and deed, not only by the terms of the levy, advertisement, and conditions of sale, but as an incident of the furnace, necessary to its use and operation, according to the design of the Messrs. Wright, in their construction of the same.

5. In charging the jury, "the presence of Messrs. A. & J. Wright at the sale, and the reading of the advertisements and conditions of sale without objection on their part, confirms this view, if confirmation were needed. After such acquiescence, they are precluded from any future exception to the title of an innocent purchaser."

*Thomas E. Franklin,* for plaintiff in error.—The maxim invoked in behalf of the defendant in this case, "*Cuicunque aliquis quid concedit, concedere videtur et id, sine quo res ipsa esse non potuit,*" must be understood as applying to such things only as are incident to the grant and directly necessary for the enjoyment of the thing granted: Lord Darcy *v.* Askwith, Hob. 234. Therefore, a lease of the coal-mines on land was held not to pass the right to fell trees on the land for the use of the mines. See also Pitt *v.* Lady Claverinth, 1 Barnard 318; Pomfret *v.* Ricroft, 1 Williams's Saunders 323, n. 6; Tomlin *v.* Fuller, 1 Ventr. 48;

Wilson *v.* Bagshaw, 5 Man. & Ry. 448; Osburn *v.* Wise, 7 Car. & P. 761.

Where a right of way has been merged in unity of possession, it does not pass by a subsequent deed, under the word appurtenances: Plank *v.* James, 5 Barn. & Adolph. 791 (27 E. C. L. R. 191).

Here there was no right of way, as Wright owned the fee. The description in the levy is specific, by metes and bounds, and does not include the lots in controversy. The word *appurtenances* is not used, and if it had been, it would not include two lots of ground separated from the grant by other land. I can find no case where, by a grant of a messuage and land by specific boundaries, other lands are held to pass as an incident; nor will a right of way over other lands of the grantor pass, although he may have used such way as owner of the fee, as was the case in Plank *v.* James.

Things incorporeal only can pass as appurtenant to things corporeal: Coke Litt. 121 b.

By the grant of a furnace, things will pass as incident thereto, without which, in the words of the maxim, the thing itself could not exist as a furnace; but however convenient a railroad may be to connect the furnace with the river for supplying it with fuel, it is not pretended that that is the only way of furnishing it; and both the witnesses who testified on the subject admitted that it might be otherwise, though not so advantageously supplied. The question is not one of convenience. Where a right of way is to be inferred from a grant, the necessity for it must be absolute. If the party has at the time of the grant, or subsequently acquires, the ability to pass over his own land to the place granted, he cannot claim a way of necessity, however inconvenient the other mode of approach may be: Holmes *v.* Goring, 2 Bingh. 76.

If the defendant can succeed, it would work great injustice to the plaintiff, as his lien was prior to that of Fallon on these lots, which were not included in the mortgage; and as the sale was clear of the mortgage, and the whole proceeds went to pay it, he was cut out from receiving any part of them. The offer of the mortgage in evidence was relevant to show this, as well as to show the identity in the description in the levy with that in the mortgage; and it was therefore error in the court to overrule it.

As to the second reason of the court below. 1. The sheriff's advertisement does not state that he offered the railroad for sale, or any part of it, but merely mentions the connection with it as one of the advantages of the property he was selling. 2. Silence can only estop when it would otherwise operate as a fraud. Who was defrauded here? Certainly no one but Fallon, the

purchaser, under whom defendant claims.    But Fallon was the
plaintiff in the execution, and knew exactly what he had levied
on, and knew that the sheriff could sell no more.    He could not
have been deceived as to what was the effect of the sale, nor is
it pretended that he was deceived.    How was the present plain-
tiff estopped?    He had no right to interfere, nor could the terms
of the sheriff's advertisement indicate to him that any claim to
encroach on his rights could ensue from what the sheriff said:
Hill *v.* Epley, 7 Casey 331.

The sheriff's advertisement could not of itself avail to extend
the effect of the levy, even if it had stated that the railroad was
offered as part of the property, and would pass to the purchaser.
The description in the levy must govern all subsequent proceed-
ings: Grubb *v.* Guilford, 4 Watts 244; Streaper *v.* Fisher, 1
Rawle 155.    Much less can the indefinite introduction into it of
a statement of the connection with this railroad as an advantage
recommending it to bidders.

*Thaddeus Stevens* and *O. J. Dickey*, for defendant.—The thing
levied on was " called and known as the Shawnee Iron Works."
Had there been no other description, either in the levy, adver-
tisement, or sheriff's deed, it would have been sufficient to con-
vey everything attached to or which had been used as a part of
the furnace, and without which the furnace would have been less
valuable: Washburn on Easements 34; 1 S. & R. 169; 10 Id.
63; 3 Mason 280; 6 Cowen 677.

That the railroad would pass as an appurtenant is fully shown
in the following authorities, even if it were not attached to the
iron works: 4 Barr 553, 585; 1 Wright 503; 2 Watts 463.
Defendants seem to concede that if the word " appurtenances"
had been used, it would have passed.    No such word was ne-
cessary.    " Though the word ' appurtenances' were not used,
the right to water passed, as an incident to the furnaces and
mill:" 9 Harris 459.

Even if necessary in a deed by the party, it would not be in
a sheriff's deed: Cope *v.* Grant, 7 Barr 491; Id. 491–2.

" When anything is granted, all the means to attain it, and
all the fruits and effects of it, are granted also, and shall pass
inclusive, together with the thing, by the grant of the thing
itself, without the words *cum pertinentiis* or any such words:"
Touchstone 89.

To be appurtenant, a thing need not be indispensable.    If it
be a very great use or convenience, it is enough: McCullough
*v.* State of Maryland, 4 Wheaton.

The acquiescence of A. & J. Wright at the sheriff's sale,
showed that the advertisement truly described what was levied

on. But if the levy had not included the railroad, and the advertisement offered it for sale in the presence and acquiescence of the then defendant and the present plaintiff, it would have passed: Buchanan *v.* Moore, 13 S. & R. 304.

The opinion of the court was delivered, July 1st 1863, by

THOMPSON, J.—The question involved in this controversy is whether the entire railway, with its inclined plane to the tunnel heads of the defendant's furnace stacks, and extending to the Susquehanna river a distance of about 1100 yards, in use in connection with the Shawnee Iron Works at the time of the levy and sale, passed by that sale under the circumstances disclosed.

The circumstances were briefly these:—Between the ground and adjoining lots on which the company's furnaces stand, and the river lot, there are two intervening lots, the roadway over which gives rise to this suit. They belonged to Rhoda Wright before the road was built, but she granted a right of way over them by parol to the Shawnee Iron Works Company. And they constructed their road in 1854, which was in use, in connection with the furnaces, transporting coal and ore from the river to the furnaces, and carrying metal to the Pennsylvania Railroad, from that time to the time of the levy and sale. There were two other intervening lots, belonging to Jonathan Pusey, over which they also had a right of way, and we hear of no trouble about them. The sheriff's sale of this property to the party from whom the defendants derive title, took place in 1858. Prior to that time and in 1855, Rhoda Wright and C. M. Wright conveyed the two lots mentioned to Archibald Wright, one of the members of the firm of the Shawnee Iron Works, of course subject to the right of way formerly granted to him and his brother for the use of the company. The levy was of the ground on which the furnaces stood and adjacent lots, and the lot or lots at the river, without notice of the two intervening or Rhoda Wright lots. All this property passed to the purchaser at the sheriff's sale, and of course the railroad as laid upon them. But the plaintiff, who afterwards, and in 1859, levied on these lots on an execution against Archibald Wright, and had them sold, and bid them in himself, claims that portion of the road or road-bed upon these lots, and has brought this ejectment for the ground occupied by the road-bed. His claim is not rested on the ground of want of knowledge of the road, or that it was constructed by the former owners of the Shawnee Iron Works, or its purpose. It was on the ground long before the lien of his judgment attached, and he was present at the sale when the other parts of it unquestionably passed to the purchaser. It was, in fact, so advertised, cried, sold, and a deed made for it as would have undoubtedly passed it, but for the fact that the word *appurtenances*,

used in the advertisement, was not in the levy; and on this ground the plaintiff, claiming that the levy was specific, and rightfully, too, claiming that, unless in special circumstances, this must control the question as to what was sold, now claims that the road and right of way did not pass by the sale under which the defendants claim. To determine this, we must look at the levy. The material part of it, omitting the description of the ground, is as follows:—

"By virtue of the within writ, I have seized and taken in execution all the following described tracts, pieces, or lots of land, with all and singular the buildings, furnaces, and other improvements thereon, known as the Shawnee Iron Works."

Are we bound to consider this levy so specific as to exclude everything not specially mentioned, as contended for with some plausibility, by the counsel for the plaintiff in error? Let us see. The levy was of the lots and lands of the defendants, as described, "with all and singular the buildings, furnaces, and *other improvements* thereon, known as *The Shawnee Iron Works.*" Now here is an enumeration of the items of the levy, it is true, but there is added what describes the property or establishment intended to be sold. If any part of what was intended to be levied on was omitted to be enumerated, the maxim "*falsa demonstratio non nocet,*" will apply. It will not be vitiated by this error, for the general description shows what was intended. Things should be described by their proper names or descriptive terms, but things may pass under any denomination by which they have been usually distinguished: Finch's Case, 6 Rep. 1. We cannot disregard this part of the description, for it is the requirement of the law, that if any part of an entire establishment, such as a mill or foundry or a furnace establishment, be seized in execution, the whole must be sold. If the descriptive parts of the levy omit any thing which is parcel of the whole, we must look to the entire levy to see what was intended to be seized; and here we discover that the description does not enumerate all that constituted the property known as the Shawnee Iron Works, but it declares that it is the works known by that name which are seized and to be sold. As the levy, therefore, does not exclude the part claimed by the plaintiff, it must be held included by the general description, and will pass: Buckholder *v.* Sigler, 7 W. & S. 154. What is most material and most certain in a description shall prevail over that which is less material and less certain: 6 Cowen 701, and note. Now can it be doubted that this railway, with its stationary engine at the head of the plane, constructed at a great expense, alone for the successful operation of the furnaces, was not parcel of the works known as the Shawnee Iron Works? It had no other object and was of no use otherwise, and it was attached to and partly

9 Wr.—31

operated by the furnaces. Could a bidder at the sale, seeing all this, doubt that it would pass under a sale of the entire premises?. But if there were doubts arising out of the terms of the levy-itself, the rule is that the construction shall be favourable to the plaintiff, in furtherance of his remedy to collect his debt rather than that he should lose it: Inman *v.* Kutz, 10 Watts 100. Certainly, I think, the first and only impression would be, that a structure like this, having its only utility in connection with the premises, was part and parcel of it.

To preserve the entirety and promote the utility of property connected and used together or as a unit, many things pass without the words *cum pertinentiis* or *appurtenances*, as incidents. In Washburn on Easements 34, many instances are given, with the authorities English and American. Thus, the grant of a mill passes the head-water by which it is carried: so it carries a right to flow the grantor's land and the whole right of water which had been previously used, with it, by the grantor; so it carries the flow of water in the race. So the devise of a mill carries buildings, land, and privileges necessary to its use. So the exception from the grant of a larger estate of the " brick factory" was held to include with such factory, the land on which it stood and the water privilege belonging to the same : Allen *v.* Scott, 21 Pick. 25. The grant of half a dam conveys with it half the water-power : Runnels *v.* Bullen, 2 N. H. 532. So the reservation of a mill site embraces not only the land of such site, but the right of flowage of a pond for the use of the mill: Oakley *v.* Stanley, 5 Wend. 523. These rights do not pass alone, on the ground of absolute necessity, as some of the more ancient cases seem to show, or on the principles governing rights of way of necessity. " One general test," says Washburn, " is how far the incidents claimed are necessary to the *reasonable enjoyment* of what is expressly granted." " The good sense of the doctrine on this subject," said Story, J., in Whitney *v.* Olney *et al.*, 3 Mason 280, " is that by the grant of a thing whatever is parcel of it, or of the essence of it, or necessary to its beneficial use and enjoyment, or in common intendment is included in it, passes to the grantee." In Broom's Maxims, title " *Rights and Liabilities of Property*," page 199, this doctrine is treated, and it is stated by that very learned and excellent writer, " that in a very recent case, it was held that a certain coal-shoot, water and other pipes, all of which were found by a special verdict to be necessary for the *convenient* and beneficial use and occupation of a certain messuage, did, under the particular circumstances, pass to the lessee as integral parts of such messuage:" Hinchcliffe *v.* Earl of Kinnoul, 5 B. N. C. 1.

We have one case of property passing as incident to the gene-

[Wright *v*. Chestnut Hill Iron Ore Co.]   .

ral grant, which is apposite to the doctrine asserted : it is Buck-holder *v.* Sigler,. 7 W. & S. 154.  There the owner of a tract of land purchased a small piece, about one acre, adjoining, for the purpose of using it in connection with the larger tract, on which he was about to erect a mill.  It was held that he thereby made it a part of the whole; and a levy and sale by the sheriff of the larger tract, without a description including the smaller, carried the whole to the purchaser.  This, too, without the word *appurtenances* or any equivalent term being used in the levy.  So in Grubb *v.* Guilford, 4 Watts 223, a similar doctrine had been stated.

If, then, this railway was parcel of the machinery, useful and necessary in the manufacture of iron, and thus in effect parcel of the establishment, I cannot see why it should not pass by the sale of the property to which it was attached, and in connection with which it was solely used.  It was in the same ownership with the furnace property at the time of the levy, belonged to it, was open to the eye of the bidders, and notoriously used as part and parcel of the property.  I regard it as much a necessary part of the Shawnee Iron Works as the bridge-house, casting-house, or other convenient buildings.  It is possible to make iron without these conveniences merely, but as they are usually necessary to its successful manufacture, they became part of the establishment, and will pass with a sale of the general premises. So of a short and special railway, like the present; designed and used in aid of the principal agent in the manufacture to supply it with the raw materials, ore and coal. ,

The purchaser at sheriff's sale had, by his purchase, beyond all controversy, both ends of the railway.  It passed to him as incumbent of the lots sold.  The intermediate lots did not pass.  But as the roadway passed over them, and as the right of way existed in them as well as it existed in the lots of the defendants in the execution, it passed at the levy and sale, so far as these lots are concerned, as incident to the works, or we have the absurdity of selling the ends of a road with a portion of the middle out.  But we have illustrated this idea sufficiently in the foregoing opinion.  We think the defendant's title to the railway is sustainable on both grounds.  We see nothing in the errors assigned to the admission of evidence, and as the learned judge below arrived at a correct result, the

Judgment is affirmed. :