## Milnes *v.* VanGilder.

*Statute of limitations—Adverse possession—Vendor and vendee.*

The statute of limitations runs in favor of a grantor in a general warranty deed, who refuses to deliver possession to the vendee and remains for the statutory period in open, continuous and adverse possession of the land.

Failure of the vendee in a deed of general warranty to assert his title by ejectment against the vendor in possession, seems to be an admission that he cannot.  Refusal by a vendor in possession of premises to surrender them to a vendee demanding delivery, is notice to the latter to proceed to the vindication of his rights, and if he delay doing so beyond the period of twenty-one years, his deed will not prevail against his vendor's adverse possession.

The vendor need only defy his vendee's right to possession by distinctly refusing it when demanded, and, if then he is not disturbed for twenty-one years, at the expiration of that period the statute protects him no less than a stranger to the title, if he can establish the kind of possession required by the law in the interval.  DEAN, J., dissents.

Argued March 15, 1899.  Reargued March 12, 1900.  Appeal, No. 56, Jan. T., 1899, by defendant, from judgment of

C. P. Lycoming Co., Sept. T., 1897, No. 143, on verdict for plaintiffs, in case of William B. Milnes, Victoria Reay, formerly Victoria Milnes, John Milnes, Isabella Snyder, formerly Isabella Milnes, Martha Bittenbender, formerly Martha Milnes, George W. Milnes, Lillian Milnes, Thomas B. Milnes and Susanna Milnes v. Samuel G. VanGilder and Mary A. Van Gilder, whose death was suggested, and Harry A. VanGilder, the next in interest substituted. Before GREEN, C. J., Mc-COLLUM, MITCHELL, DEAN, FELL, BROWN and MESTRE-ZAT, JJ., on reargument. Reversed.

Ejectment for a house and lot of land in Williamsport.
The facts appear by the opinion of the Supreme Court.
Verdict and judgment for plaintiff. Defendant appealed.

*Error assigned* was in giving binding instructions for plaintiff.

*H. T. Ames*, of *Ames & Hammond* and *J. M. Garman*, for appellant.—In the decision of this case it is of importance to determine what weight is to be given to the refusal of Mrs. Van-Gilder to surrender possession of the land in dispute to the grantee of her grantee, Milnes: Atkyns v. Horde, 1 Burr. 119; Schall v. Williams Valley R. R. Co., 35 Pa. 191; Hawk v. Senseman, 6 S. & R. 21; Woods v. Lane, 2 S. & R. 53; Foster v. McDivit, 9 Watts, 341; Kline v. Johnston, 24 Pa. 72; Heffner v. Betz, 32 Pa. 376; Martin v. Jackson, 27 Pa. 504; Saunders v. Gould, 134 Pa. 445; Cullmans v. Lindsay, 114 Pa. 166; Mead v. Conroe, 113 Pa. 220.

Mrs. VanGilder is not estopped from claiming the land in dispute because her deed to Milnes contains a covenant of general warranty: Sherman v. Kane, 86 N. Y. 57; Zeller's Lessee v. Eckert, 4 Howard (U. S.), 289: Schall v. Williams Valley R. R. Co., 35 Pa. 191; Leeds v. Bender, 6 W. & S. 315.

*J. T. Fredericks* for appellee.—All of the facts in the case were so clear to the court below that it was the duty of the court to instruct the jury to find for the plaintiff: Olwine v. Holman, 23 Pa. 279; Bannon v. Brandon, 34 Pa. 263; Union Canal Co. v. Young, 1 Wharton, 426; Buckholder v. Sigler, 7 W. & S. 154.

A mere refusal to give up possession on the part of the grantor without some act of open hostility clearly denying the right of the vendee to claim the title, cannot be sufficient under a deed of general warranty: Connor v. Bell, 152 Pa. 444; Cadwalader v. App, 81 Pa. 194.

OPINION BY MR. JUSTICE BROWN, October 8, 1900:

The facts in this case can be very briefly stated. Mary A. VanGilder, the owner in her own right of the premises in dispute, as devisee of her father, Allan Harvey, conveyed the same, by a deed of general warranty, on July 30, 1870, to William Milnes, the ancestor of the appellees, but did not deliver possession to him. On September 9, 1871, Milnes conveyed them to John R. Hazelet, who, on October 4, 1871, served written notice on Mary A. VanGilder and Samuel G. VanGilder, her husband, that he had purchased the property and demanded possession, which was refused. After so serving notice on the VanGilders and their refusal upon demand, so made, to surrender possession of the premises to him, Hazelet, in a conversation with Milnes, was told by the latter that he could not deliver possession. Milnes, having been so unable to deliver possession to Hazelet, paid him $150 or $200 and took a reconveyance of the land by deed dated January 16, 1872. From October 4, 1871, the date of the demand by Hazelet upon the VanGilders for the surrender of the premises to him, and their refusal, they remained in open and exclusive possession, paying the taxes regularly, and almost twenty-six years had elapsed from the time demand was so made until this suit was brought, on July 7, 1897. With these facts before it, the court below directed a verdict in favor of the plaintiffs, and the four assignments of error raise the question of the propriety of the instruction so given to the jury.

In directing a verdict for the plaintiffs, the learned trial judge gave no reason for doing so, and we can only conjecture, from the case as presented to us by counsel, that he must have felt either that the statute of limitations, relied upon by the defendants, could not be invoked by them, because they were the vendors in a deed of general warranty to their vendee, through whom the plaintiffs claimed title, or that, even if the statute extends to such a case, the evidence of adverse posses-

sion submitted by the defendants was insufficient to defeat the plaintiffs' title. The statute makes no exception of a vendor in a deed of warranty holding against his vendee, and, though in such a case the presumption is that the vendor holds in subserviency to the title of the vendee, there is no reason why the wise provisions of the act should not apply, when that presumption is overcome by clear and convincing proof of a holding hostile to and defiant of the vendee's title. There have been instances within the experience of many, if not all of us, of the execution and delivery of deeds to vendees, not only not followed by delivery of possession of the premises sold, but by refusal of the same, due to alleged fraud or imposition by the vendees upon the vendors. In all of such cases, failure of the vendee to assert his title by ejectment for the possession of the property purchased seems to be his admission that he cannot. Refusal by a vendor in possession of premises to surrender them to a vendee demanding delivery is notice to the latter to proceed to the vindication of his rights, and, if he delay doing so beyond the period of twenty-one years, it is his own fault that his deed will not prevail against his vendor's adverse possession. A vendor refusing possession to his vendee has, or imagines he has, good cause for his refusal, and is not required to become the actor in any proceeding for the annulment of his deed. He need only defy his vendee's right to possession by distinctly refusing it when demanded, and, if then he is not disturbed for twenty-one years, at the expiration of that period the statute protects him, no less than a stranger to the title, if he can establish the kind of possession required by the law in the interval. This ought to be so, and a dilatory vendee ought not to complain of it. By his delay, proof of what was the reason for his vendor's refusal to deliver possession may become impossible. Witnesses may disappear, papers may be lost, or, as in the cases before us, the death of a vendee in a suit by his heirs may seal the vendor's lips, which might be able to tell why possession was refused long before when demanded. " This statute is a most important and beneficial one. It was made to protect those who had no other protection, for cases where all evidence is lost. I have attended to its operation almost half a century, and I do not know any more beneficial, and in its general operation, more just law. It gives as perfect a title, if

not a more perfect title, than any other known to our law, and, as a general rule, the cases in which it has been attempted to be avoided after the clear lapses of twenty-one years, have been reached by combination of those interested, though not known to be so, by rash swearing, and sometimes direct perjury:" Huston, J., in Leeds v. Bender, 6 W. & S. 315. We have never held that the statute of limitations does not apply to such a case, but on the other hand, have recognized its application: Connor v. Bell, 152 Pa. 444. In Sherman et al. v. Kane et al., 86 N. Y. 57, it was held upon the authority of Zeller's Lessee v. Eckert et al., 4 Howard, 289: "The doctrine, that a grantor with warranty may originate a possession adverse to his grantee, and that the adverse possession originated by a party in privity with the true owner differs from that originated by a stranger only in requiring stronger proof, is well established."

Stronger proof being required when adverse possession against a grantee is relied upon by a grantor with a warranty than from a stranger, was the evidence of appellants sufficient to justify a finding in their favor? Their possession of the premises, according to the testimony, had been, for more than twenty-one years before the institution of this suit, actual, continued, visible, notorious and distinct, and, judged by what we have said, adverse and hostile to the title of the appellees. The possession was in conflict with the deed to the ancestor of the appellees, and hostility was asserted almost from the inception of the title claimed under it. If the possession was such, the plaintiffs had no right to oust the defendants. How is it to be determined whether the possession was adverse and hostile? The answer can be found in the words of our Brother McCollum, in Connor v. Bell, supra, and the authorities there referred to. "Was such continued possession of a portion of the lot conveyed by him sufficient, in the absence of any word or act indicative of a hostile claim, to defeat the title of his grantee? This question is not a new one, and the negative answer returned to it by the learned court below is supported by our own decisions and the current of authority in this country. In vol. 1, page 247, note 4 of the Am. & Eng. Ency. of Law, it is said that 'the mere possession of the vendor of lands is not adverse to his vendee.' In Buckholder v. Sigler, 7 W. & S. 154, as in

this case, the vendee occupied a portion of the land conveyed to him, and his vendor continued in the possession and use of a part of it as before the sale. It was held that the possession of the vendor was in subservience to the title of his vendee. In Olwine v. Holman, 23 Pa. 279, it was said that 'a vendor after conveyance and before delivery of possession is to be regarded as a trustee for the vendee so far as regards the possession, just as he was a trustee of the title before conveyance. If he wishes to change the character of the possession he must manifest his intention by some act of hostility to the title of his vendee, plainly indicating to the latter the intention to deny his right and to hold adversely to it.' This principle is sound and not denied by any decision of this court." Could there have been any word or act of the appellants more plainly indicative of their "hostile claim" than their positive refusal to deliver possession of the premises when demanded by Milnes or his vendee ? Was not their defiance of the title of Milnes a manifestation of their hostility to it, indicating their intention to deny his right to the property and to hold adversely to his deed? There can be but one answer to this. By unmistakable conduct on their part, Milnes knew that his title was defied by his vendors, and that they would remain in possession in hostility to it. Certainly, they were not required to make known this hostility by any breach of the peace or unseemly conduct. They could, by firmly and unequivocally refusing to allow him or his vendee to take possession of the premises, as effectually notify him that his title was defied and they would remain in the property in hostility to it, as if, with a club or shotgun, they had kept him off. Notice to Milnes was essential. If they intended to hold adversely and in defiance of the deed they had given to him, he was entitled to distinct notice that they so held in view of the privity between them, and, if Hazelet is to be believed, he received it. According to the testimony of that witness, they did all that was required to indicate their hostile claim and adverse holding, and the jury should have been instructed that, if, from the testimony, they found for more than the statutory period the defendants had been in actual, continued, visible and distinct possession of the premises, there was sufficient evidence, if believed, that such possession was also adverse and hostile, in the face of which

the plaintiffs could not recover. That, under proper instructions the case may be submitted to a jury, the judgment is reversed and a venire facias de novo awarded.

DEAN, J., dissents.