# Hads v. Tiernan, Appellant.

*Deed—Construction—Premises—Habendum.*

A deed should be so construed that no part shall be rejected.

The office of the habendum is to define precisely the extent of the interest granted; and it may lessen, enlarge, explain or qualify the interest described in the premises if not repugnant thereto; but if absolutely repugnant to the premises, it must give way and the premises will stand.

A deed described the premises conveyed as a lot thirty-eight feet by thirty-three feet "with a two story frame dwelling house thereon, being one half of double house thereon." The habendum contained this clause, "To have and to hold said described lot of ground and one half the double house now thereon." The whole of the double house was within the lines of the lot thirty-eight feet by thirty-three feet, and the grantee understood that she was to have the whole of the lot. *Held*, that the grantor could not claim any of the land but only half of the double house, as having been reserved by the deed.

*Statute of limitations—Adverse possession—Deed.*

A grantor in a deed who has retained possession of the premises conveyed cannot claim title by adverse possession, without first surrendering possession and asserting his claim adversely, or doing some other unequivocal act, indicating a hostile interest, and brought to the knowledge of the grantee.

Argued Oct. 27, 1903. Appeal, No. 13, Oct. T., 1903, by defendant, from judgment of C. P. Blair Co., Jan. T., 1902, No. 109, on verdict for plaintiff in case of Bridget Hads v.

Thomas J. Tiernan.    Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ.    Affirmed.

Ejectment for lot of land in Altoona.    Before BELL, P. J.
The facts are stated in the opinion of the Superior Court.

*Error assigned* was in refusing binding instructions for defendant.

*D. Clare Good* and *Thomas H. Greevy*, for appellant.—An exception in a deed is always of part of the thing granted and is the whole of the part excepted : Mannerback v. Penna. R. R. Co., 16 Pa. Superior Ct. 622 ; Lillibridge v. Lackawanna Coal Co., 143 Pa. 293.

It is not uncommon for land to pass by deed or to be devised by will when described as a house: Bennet v. Bittle, 4 Rawle, 339 ; Rogers v. Smith, 4 Pa. 93.

In proceedings under the right of eminent domain by railroad companies, the word " dwelling house " has been construed to include land necessary for its enjoyment : Damon v. Baltimore, etc., R. R. Co., 119 Pa. 287.

Plaintiff is now estopped from asserting a contrary construction : Schlegel v. Herbein, 174 Pa. 504 ; Griffin v. Fellows, 81* Pa. 114.

Plaintiff had title by adverse possession.

*Samuel B. Hare* and *Thomas C. Hare*, for appellee.—The intention of the parties as deduced from the language of the deed was the criterion of construction : Corey v. Edgewood Boro., 18 Pa. Superior Ct. 216 ; Thompson v. Gregory, 4 Johnson, 81; Thayer v. Torrey, 37 N. J. Law, 339; Henderson v. Maclay, 5 Cent Repr. 225.

If the intention of the parties is in doubt, the deed must be construed most strongly against the grantor : Corey v. Edgewood Boro., 18 Pa. Superior Ct. 216 ; Karchner v. Hoy, 151 Pa. 383.

The appellant is estopped from asserting title to any portion of the land conveyed to the appellee : Com. v. Moltz, 10 Pa. 527 ; Sergeant v. Ewing, 30 Pa. 75.

The appellant did not obtain title by adverse possession to

any of the land described in deed : Bennett v. Biddle, 140 Pa. 396; Ingles v. Ingles, 150 Pa. 397 ; Connor v. Bell, 152 Pa. 444.

OPINION BY BEAVER, J., April 18, 1904:

"One of the most important rules in the construction of deeds is so to construe them that no part shall be rejected. The object of all construction is to ascertain the intent of the parties, and it must have been their intent to have some meaning in every part. It never could be a man's intent to contradict himself ; therefore we should lean to such a construction as reconciles the different parts, and reject a construction which leads to a contradiction. The premises of a deed are often expressed in general terms, admitting of various explanations in the habendum ; and in conformity with the rules mentioned the courts have always given efficacy to such explanation : " Wager v. Wager, 1 S. & R. 374.

"The office of the habendum is to define precisely the extent of the interest granted, and it may lessen, enlarge, explain or qualify the interest described in the premises, if not repugnant thereto ; but, if absolutely repugnant to the premises, it must give way and the premises will stand : " 4 P. & L. Dig. of Dec. 6672.

The plaintiff claimed, under a deed from the defendant, a lot or parcel of ground in the city of Altoona, described therein as follows : " All that certain piece or part of a lot of ground lying and being situate in the town plot of what was formerly called Greensburg, now part of the city of Altoona and the county of Blair aforesaid, with a two-story frame dwelling house thereon, being one-half of double house, and lying on northeast side of Tenth street, between Green and Chestnut avenues, said street running northwestward and southeastward ; containing in front thirty-eight feet and running back northeastward thirty-three feet at right angles to the property of William Haris, and bounded on the northwest by an alley and the southeast by the property of Thomas Tiernan, the present grantor." The habendum of said deed is as follows : " To have and to hold said described lot or piece of ground and one-half the double house now thereon, also the hereditaments and premises hereby granted or mentioned or intended

so to be, with the appurtenances, unto the said party of the second part, her heirs and assigns, to and for the only proper use and behalf of the said party of the second part, her heirs and assigns, forever."

If there were serious difficulty in construing this deed so as to reach the intent of the grantor in making it, it would be obviated by his own testimony relating thereto. He was called as a witness in his own behalf and, in his cross-examination, the following occurs : " Q. Is it not a fact that your mother conveyed to you and your brother property, with the underderstanding that you and your brother were to pay to your sister certain money? A. Yes, sir, that is it. Q. Then the reason you were to convey this property or give this money to your sister (was) that your mother had conveyed (it) to you and your brother ? A. Yes, sir. Q. Your sister wanted this property when she was about to get the money ? A. Yes, sir. Q. You concluded that the arrangement was afterwards that she was to take the property ? A. No, sir, I advanced $500, in addition to the $200 granted by my brother and me to her. I advanced $500 in addition to that and offered it to her and Mr. Hads would not be satisfied with the $700; he wanted the property. Q. Your mother conveyed to you the corner lot? A. Yes, sir. Q. And your brother, he immediately joined you on Green avenue ? A. Yes, sir; which he afterwards sold to Mr. Nare. Q. The understanding then was that, when she conveyed these properties to you, you and your brother were to pay money to your sister to equalize her share ? A. Yes, sir. Q. When you couldn't come to any other arrangement, you made this deed to her? A. Yes, sir; for one half of the double house. Q. For thirty-eight feet by thirty-three feet? A. Yes, sir, but I knew when I put that in it was to please Hads and get rid of torment: she kept me annoyed all the time, lest her marriage affair would fall through; and to end the worry and to please Hads I mentioned thirty-eight feet in the deed, but I did not believe that it amounted to anything. Q. They insisted on having thirty-eight feet— your sister did? A. Yes, sir. Q. You drew this deed to her ? A. Yes, sir, I wrote the deed. Q. You made it thirty-eight feet and put a clause in there to deceive your sister ? A. No, sir, I put an explanation in there ; I excepted the house

and I knew the house would have to have the earth to stand on. Q. Did you explain it to her? A. I explained nothing when I offered her $500. Q. Did you explain to her that exception would deprive her of the whole thirty-eight feet? A. I wasn't under any obligation to explain to her, when I proffered her $500 in addition to the $200. Q. She was under the impression that she was getting thirty-eight feet? A. That it was her legacy."

In view of those statements by the defendant, it might be seriously questioned whether the habendum was not absolutely repugnant to the premises and, being so, must give way, but the plaintiff is not an appellant here and, inasmuch as the court below held that the defendant had excepted the one half of the house and should have the right to remove it and the plaintiff expressly assented thereto, we are not called upon to go the length of holding that the exception contained in the habendum must fall. Taking the deed as a whole, we are of opinion that the title to the land described therein—thirty-eight feet front and thirty-three feet in depth—passed by the conveyance from the defendant to the plaintiff.

As to the question of title by adverse possession, it has no place in this case. The defendant could not claim in opposition to his deed, without first surrendering possession and asserting his claim adversely or doing some other unequivocal act, indicating a hostile intent. " The possession of real estate by a vendor, after execution and delivery of a deed therefor, is in trust for the vendee and the statute of limitations will not begin to run until the vendor asserts an adverse holding by some unequivocal act brought to the knowledge of the vendee: " Ingles v. Ingles, 150 Pa. 397. What was said in that case fairly applies here : " It was said in Olwine v. Holman, 23 Pa. 279, that a vendor, after conveyance and delivery of possession, is to be regarded as a trustee for the vendee, so far as regards the possession, just as he was a trustee of the title before conveyance. If he wishes to change the character of the possession, he must manifest his intention by some act of hostility to the title of his vendee, plainly indicating to the latter the intention to deny his right and to hold adversely to it. The same doctrine is asserted in Buckholder v. Sigler, 7 W. & S. 154. This well established rule applies with special

force between a father and his son. In such instance, it is not unusual for the vendee to leave the vendor in possession for an indefinite period or for life. Such transactions are often arrangements to suit the family convenience. The possession of the vendor is the possession of the vendee and, until some unequivocal act is done by the vendor, the knowledge of which is brought home to the vendee, tending to show that the former holds adversely, no question of the statute of limitations can arise." No more can it arise in this case. Giving the widest latitude to the claim of the defendant, he had a right only to the possession of the half of the double house in which he resided and must be held to have retained that possession in harmony with the conveyance of the land made in the deed to his sister.

In view of the fact that there is no appeal here on the part of the plaintiff, we leave it to the court below to care for the interests of the defendant, as it is intimated in the charge of the trial judge will be done.

Judgment affirmed.