## Philippi *et al. v.* Philippi.

*Bill in Equity to declare and enforce Trust, and compel Settlement of Partnership Accounts.*

1. *Bill to establish partnership; when not maintainable.*—A bill will not be entertained to establish a partnership between two persons, settle its dealings, and declare one of them trustee for the benefit of the other as to purchases of real estate, when more than twenty years have elapsed since the accrual of the right, before suit brought, during all of which period the defendant denied and disregarded the rights of the other alleged partner; and the fact that the partners were brothers, complainant being averse to litigation, and on that account failing to sue in time, will not alter the case.

2. *Stale demands; rule as to.*—Where a claim is sought to be enforced, *prima facie* within the operation of the rule against stale demands, the complainant should show by positive and specific allegations, some act or recognition of the party sought to be charged, within the period which will take the case out of the rule; mere general and vague averments of facts and circumstances, out of which the right sought to be enforced arises, or on which recognition of it is sought to be based, will not suffice.

APPEAL from Chancery Court of Mobile.

Heard before Hon. H. AUSTILL.

The appellants, who are the widow and children of Angelo M. Philippi, (the widow also being his administratrix,) filed this bill on the 17th of April, 1877, against the appellee, Antonio Philippi, seeking thereby to establish a partnership between the appellee and said Angelo, and to compel a settlement of its affairs; and, secondly, to have the said appellee declared a trustee for the said Angelo as to an interest in certain property which is described in the bill, and to have dower therein assigned to the widow.

The case made by the bill is as follows: About the year 1835, Angelo M. Philippi, a native of Corsica, came to Mobile and engaged in business as a saloon and boarding-house keeper. He was thrifty and prospered, so that in 1840 he

was deemed a man of means, and in that year became a naturalized citizen of this State.

About the year 1840 or 1841, the appellee, Antonio Philippi, the younger brother of Angelo, also came to Mobile. Antonio on his arrival was apparently in humble circumstances, and without employment. Angelo lodged him, gave him employment, and finally associated him in business with himself. Their affairs continued to prosper, and in 1845, the elder brother being then a man of wealth, resolved to revisit his native land. Upon his departure, he placed all his property in the custody of Antonio, in trust, to manage and invest for him, which trust Antonio accepted, and acknowledged by writings signed by him ; and Antonio continued to carry on, for the joint benefit of himself and his brother, the partnership business in which they had previously been engaged.

Angelo remained in Corsica eleven years, and while there married his wife Angela, by whom he had a number of children.

In the meantime, Antonio remaining in Mobile, managed his brother's affairs and property with skill, as well as the joint business in which they were partners. The magnitude of this property and business was such that in May, 1847, Antonio held the sum of $10,000 the property of his brother, on which he was to pay him interest ; and for the year ending November, 1847, the profits of the joint business was $8,000, and the income derived for the same period from slaves, which Antonio held as the joint property of himself and his brother, was $4,500. The bill charges that for a time Antonio kept true accounts between himself and Angelo ; that he invested the gains of himself and his brother largely in real estate, taking the title thereto in his own name ; that in the year 1848, the real estate, consisting of six houses, thus held by him was of the value of $26,000, and that subsequently he bought a large amount of real estate with the revenue derived from these houses and the other joint property.

In 1856, Angelo returned to Mobile and called on Antonio for a settlement of the partnership affairs, and for the payment of his share of the profits, which the bill alleges Antonio from " time to time " promised should be done.

The bill further charged that the partnership had never been dissolved ; that it never was insolvent, and had no debts outstanding against it ; and " that no account had ever been had of the same, or division made of its assets finally." . ..

Angelo died in Mobile intestate in May, 1874, leaving the appellants as his widow and heirs-at-law.

The bill alleges, as a reason for the delay in asserting the rights claimed therein, "that said Angelo repeatedly declared that the thought of a suit at law with a brother was repugnant to him, and that he always expected his brother would render him a full account, and pay him his share of the property which he had placed with him in trust before leaving for Europe in and about the year 1845; that should defendant fail to do so, he repeatedly told his children that they would not be restrained after his death by the considerations which controlled him during his life-time, from proceeding against the defendant, his brother.

The appellee demurred to the bill, setting up the statute of limitations, and the staleness of the demand made therein, and on a hearing the chancellor sustained the demurrer and dismissed the bill.

This decree is here assigned as error.

F. G. BROMBERG, and STEPHENS CROOM, for appellants. The trust set up in the bill is a *direct trust*, and is evidenced by writing. No formality is necessary to create a trust.—1 Perry on Trusts, §§ 82, 83, 86; 2 Wash. on Real Prop. 442, 446–7. Any writing signed by the party to be charged is sufficient to create a direct trust.—Code of 1876, § 2199; 1 Perry on Trusts, §§ 79, 80, 81. And a direct trust is never barred by lapse of time.—2 Perry on Trusts, §§ 863, 866; 1 Dan. Ch. Pr. (4 Am. ed.) 560, 618, n. 3; 18 Wall. 509; 3 Johns. Ch. 139; 5 Pick. 322. Mere lapse of time constitutes no bar to a bill to enforce a subsisting trust, and time begins to run against a trust only from the date of its open disavowal. Even unjustifiable delay and gross inattention on the part of the *cestui que trusts* furnish no bar to relief against persons conversant with the trust.—22 Ind. 149; 5 Ves. 492–94; 4 Myl. & Craig, 52. No length of mere possession or occupation can bar the *cestui que trust*.—2 Wash. on Real Prop. 457, § 37; 8 Watts (Penn.) 509; 2 Hawk's (N. C.) 290–1. Delay in instituting proceedings where the parties are members of the same family, is not so strictly regarded as where they are strangers to each other.—2 Story's Eq. Jur. (10th ed.) § 1520d; 23 Ala. 690; 2 Seld. 268; 2 Halst. Ch. 159. The *cestui que trust* can follow trust property, if not held by a *bona fide* purchaser without notice, or pursue the proceeds, or the substituted property.—1 Perry on Trusts, § 447; 18 Wall. 332; 3 How. (U. S.) 333; 3 Sneed, (Tenn.) 462.

[Philippi v. Philippi.]

Even if the heirs of Angelo are barred by lapse of time, yet his laches could not strip his widow of her dower rights in the property. These rights are not barred by lapse of time. Angelo died on the 4th of May, 1874, and his widow's rights then first became complete.—Code of 1876, §§ 2232, 2233; 36 Ala. 532; 11 Ala. 386; 2 Scrib. on Dower, 4, § 3; ib. 135, § 4; 1 Perry on Trusts, § 324. Dower right is not affected by any act of the husband or by any adverse possession against him.—1 Wash. on Real Prop. (3d ed.) 284; 17 Am. Law Reg. 319. Courts of equity have jurisdiction in the assignment of dower.—40 Ala. 538; 26 Ala. 547.

STEWART & PILLANS, *contra.*—The partnership matter is very indefinitely stated. The allegations in respect to it are not sufficiently certain and explicit to found upon it a remedy which for eighteen years was not claimed by the decedent. The transaction set forth was simply an agency, and not such a trust as calls for the jurisdiction of equity. The proper definition of a trust, in the sense required by a court of equity, is where there is a conveyance of title to a trustee for the use and benefit of a third person.—1 Perry on Trusts, ch. 1, p. 1, and particularly sections 1 and 2; and see sections 7, 8, 13, 16, 17, 18, and 24. The complainants call this an express trust. But an express trust is a *contract*, and must be a valid contract, not in violation of the statute of frauds; and if not to be executed within a year is void as a contract unless there be a memorandum in writing.—See (Statute of Frauds), 1 Perry on Trusts, 66, §§ 82, 83. The statutes of Alabama recognize and enforce this principle absolutely as to lands.—Rev. Code, § 1590. The bill does not say whether the property left in the hands of Antonio was real or personal. The trust is not defined, but if it is to be construed for accumulation, then another statute is in the way of recovery.—Rev. Code, § 1580. If the trusts set up in the bill are constructive trusts, they are within the application of the statute of limitations.—See *Coyle v. Wilkins*, and *James v. James*, in manuscript. The demurrer was properly sustained. 41 Ala. 344; 8 Porter, 211; 21 Ala. 692; 5 Ala. 90; 2 Ala. 555.

As to the dower claimed, unless the husband had an estate in the lands there can be no dower, and the bill shows no dowable estate in the husband.

STONE, J.—The object of the present bill is, first, to establish a partnership between defendant and Angelo M.

[Philippi v. Philippi.]

Philippi, through whom complainants claim, and to have a settlement of its dealings; and, second, to have said defendant declared a trustee for said Angelo, of an interest in certain property, a part of which is described in the bill. A summary statement of the case made by the bill is, that about the year 1840, Angelo and Antonio Philippi formed a partnership in the keeping of a restaurant and boarding-house, and that the business was prosperous and remunerative; that in the year 1845, Angelo, who was of foreign birth, returned to France, leaving the business of the partnership undivided and unsettled, in the hands of his brother Antonio, and that the partnership has never been dissolved or settled up; that in 1856 Angelo returned to Mobile, his former home, where he afterwards continued to reside until 1874, when he died intestate. The present bill is filed by the administratrix, widow and heirs-at-law of Angelo Philippi; the suit being commenced April 17th, 1877. The material allegations of the bill, which are relied on as showing its equity, are as follows: "That extremely amicable relations existed between defendant and his brother, said Angelo M. Philippi, from the time said defendant arrived in Mobile, in or about the year 1840 or 1841, uninterruptedly until in or about the year 1856, and that the partnership relations between defendant and his said brother Angelo, were also continuously amicable and harmonious, until the return of said Angelo from Europe, as hereinafter stated; that said partnership between defendant and his brother, said Angelo M. Philippi, was upon equal terms, share and share alike. . . . That in or about the year 1845 aforesaid, said Angelo returned to France on a visit, and placed all of his affairs and property of every kind and description in the city of Mobile aforesaid, in the keeping of his brother, the defendant, to manage and invest for him, and to invest the rentals, incomes and profits of said property and business; and your complainants charge that said defendant expressly accepted said trust, and also evidenced and acknowledged the same by writings signed by himself. Your orators and oratrixes further show that at this day they can not set forth in detail all the said affairs and property so placed in trust with said defendant by said Angelo M. Philippi, but they charge that on or about the 5th day of May, 1847, defendant had in trust for said Angelo M. Philippi, the sum of ten thousand dollars belonging to said Angelo M. Philippi, upon which the said defendant had agreed with the said Angelo to pay him interest. And complainants further charge that besides holding in trust the

separate property of said Angelo M. Philippi, the defendant continued to carry on for account of himself and of· his brother, said Angelo M. Philippi, the partnership affairs between them, and for a time continued to keep true accounts, and therein set out the respective share of each in the joint gains of said partnership, as was his duty; and they further charge that the magnitude of the partnership operations hereinbefore referred to was such, that defendant's accounts for the year ending November 1st, 1847, showed the net joint· profits to be eight thousand dollars, one-half of which, or four thousand dollars, defendant set out to the account of said Angelo M. Philippi, and held subject to said Angelo's order in March, 1848. And complainants further charge that the number of slaves held, at or about the same time by said defendant, in trust for himself and said Angelo M. Philippi, was such that the annual income derived from the hire of said slaves for the year 1848 was four thousand five hundred dollars. And complainants further charge that the real property held by defendant in trust for himself and his brother, said Angelo M. Philippi, at or about that time, consisted in March, 1848, of at least six houses in the city and county of Mobile, whose aggregate value exceeded twenty-six thousand dollars. Your orators and oratrixes further show and charge that no settlement was ever made of said trust and partnership affairs, after said Angelo M. Philippi departed for Europe to revisit the same, in or about the year 1845. And complainants further show that said Angelo M. Philippi returned to Mobile in or about the year 1856, and thereafter requested defendant to account for the partnership property, and for the real and personal property held by said defendant in trust for him, the said Angelo M. Philippi; and that defendant promised from time to time so to do; but has hitherto neglected and failed so to do. Your orators and oratrixes further show and charge that said partnership has never been dissolved by voluntary act of the parties thereto, and was never insolvent; that there are no debts outstanding against it, and that no account has ever been had of the same, or division made of its assets finally. . . . Complainants further show that said Angelo repeatedly declared that the thought of a suit at law with a brother was repugnant to him; and that he always expected that, at some time, defendant would render him a full account, and pay him his share of the various property and affairs, placed by him in trust with his said brother the defendant, before leaving for Europe in and about the year 1845. That should defendant

[Philippi v. Philippi.]

fail so to do, he repeatedly told his children that they would not be restrained after his death by the considerations which controlled him during his life-time, from proceeding against defendant, his brother." The bill charges that the titles to the real property, in which it seeks to establish a trust, were all taken in the name of the defendant alone; many of the titles bearing date from 1845 to 1850. Neither writings or letters are made exhibits to the bill, nor is there any attempt to set out the contents of writings, further than is shown above.

It will be observed that the bill does not disclose, or attempt to disclose, in what the partnership property consisted, when it is alleged it was placed in the hands of Antonio, defendant, in trust. It does not appear whether it was real or personal property, or what was its value. No attempt is made to set forth the date or contents of the paper writing, by which, it is averred, the trust was acknowledged. Nor is it shown in what manner, or in what description of property, Antonio was to invest the funds of Angelo, charged to have been left with him in trust for investment. Neither is any date or time fixed, after Angelo's return from Europe in 1856, when Antonio, "from time to time," promised "to account for the partnership property, and for the real and personal property held by said defendant in trust for him, the said Angelo M. Phillippi," nor is it averred to what extent, if any, Antonio admitted himself liable to account. Everything is stated in the most general and indefinite terms. It is a cardinal rule to construe equity pleadings most strongly against the pleader. Under this rule, no act in recognition of the partnership or trust, is averred to have been done after the year 1848. The present bill was filed twenty-nine years afterwards. Even if we attach any importance to the alleged promise to account after Angelo returned from Europe, this was twenty-one years before this suit was commenced. We fully concur with the chancellor that the present complainants have slumbered too long on their claim to have it entertained in a court of equity.—*Rhodes v. Turner*, 21 Ala. 210; *Austin v. Jordan*, 35 Ala. 642; *Goodwyn v. Baldwin*, 59 Ala. 127; *Dawson v. Hoyle*, 58 Ala. 44; *Bradford v. Spyker*, 32 Ala. 134; *Harrison v. Heflin*, 54 Ala. 552.

The claim of dower is equally lost to the demandant, Mrs. Angela F. Philippi. It falls within neither of the subdivisions of section 2232 of the Code of 1876. Her husband was not "seized in fee during the marriage." According to the lapse of time, during which her husband slumbered on

his alleged rights, the intendments and presumptions above expressed, it is not shown that, as to any of these lands, "another was seized in fee to his, [her husband's] use." Dower is a derivative estate, carved out of the inheritance; and when there is no inheritance, there can be no dower. *Edwards v. Bibb,* 54 Ala. 475. Nor had her husband, at the time of his death, "a perfect equity, having paid all the purchase-money thereof."

Affirmed.