# Chancellor *v.* Teel, *et al.*

### Bill in Equity to establish Claim to Interest in Decedent's Estate.

1. *Deed; what constitutes a delivery.*—If after a deed has been duly signed and attested by two witnesses and regularly acknowledged by the grantor, it is filed in the office of the Judge of Probate for record, this constitutes a sufficient delivery, completing the execution and delivery of the instrument.

2. *Possession of land; referred to the legal title.*—Where after the execution of a deed, conveying land to his' daughter, the grantor who lives with the grantee, is in possession of said lands, and exercises control over them, such possession' and control will be referred to the legal title which exists in the grantee, and any rights or advantage springing from the grantor's possession inures to the benefit of the grantee.

3. *Same; proceeds of crops belong to owner of land.*—The general rule of the common law is that crops form a part of the real estate to which they are attached, and the proceeds of crops raised on lands belonging to the owner of the legal title, although such crops were raised under the direction and supervision of one who managed the property as the representative or agent of the owner of the legal title.

4. *Register's report; when should not be disturbed.*—When the conclusions of the register are drawn, not only from depositions, but also from the oral examination or pleadings before him, the same weight and affect should be given and accorded to his findings, as is given to the verdict of a jury; and if from the whole evidence it is a matter of reasonable doubt whether his findings are correct, they should not be disturbed.

APPEAL from the Chancery Court of Pike.

Heard before the Hon. A. H. ALSTON.

The bill as originally filed was filed by the appellant, Saphronia Chancellor, against A. L. Teal and Tidy Pennington. The bill alleges that the complainant is the daughter of Arnold Teel, deceased, and that respondents, A. L. Teel and Tidy Pennington, are the children of said Arnold Teel, deceased, and that they, the three

above named, are the only children and heirs at law of the said Arnold Teel; that their mother died prior to the death of Arnold Teel, and that he never married again. It is further alleged that Arnold Teel died intestate a few months prior to the filing of the bill in August, 1894; that, at the time of his death he owned no debts for which his estate was liable, that there had been no administration of his estate and that none is necessary.

It is further alleged that Arnold Teel at the time of his death owned certain personal property which is described in the bill, and it is alleged that this property was disposed of or converted by A. L. Teel with the aid and consent of Mrs. Pennington, and that the proceeds were divided between them, or that said property was converted by them to their own use. The bill also contains a number of interrogatories propounded to each of the two respondents.

The bill is verified and prays for the appointment of a receiver, without notice, and seeks to have the money and property referred to and described in the bill decreed to be the property of Arnold Teel, deceased, at the time of his death, and the prayer is for a personal decree against respondents and for the fastening of a lien on the property of the respondents and a subjection of the same to the payment of the amount ascertained to be due to complainant as her one-third interest in the estate of her father. The chancellor appointed a receiver without notice to the respondents.

The respondents filed an answer, which was verified, specifically denying that the property described and referred to in the bill belonged to Arnold Teel at the time of his death. The answer further set out that the property described in the bill belonged to Palestine Teel, the wife of A. L. Teel, and attached as exhibits to the answer deeds, describing property conveyed to Palestine Teel. The answer further averred that the money, cotton and other property referred to in the bill was property which had been given or conveyed to Palestine Teel by Arnold Teel, or was property which was the proceeds of crops raised upon the lands of Palestine Teel.

[Chancellor v. Teel, *et al.*]

Palestine Teel and A. L. Teel made a motion to discharge the receiver on the verified answer of A. J. Teel and Tidy Pennington, and on the affidavits of Palestine Teel and A. L. Teel. Upon the hearing of the motion a decree was rendered discharging the receiver.

The bill as originally filed was amended by making Palestine Teel a party defendant; also by averring that Arnold Teel at the time of his death was the owner of a large amount of real estate referred to as being described in the deeds attached as exhibits "A" and "B" to the answer of A. L. Teel to the original bill. The bill of complaint, as amended, alleges that Palestine Teel is the wife of A. L. Teel, the daughter-in-law of Arnold Teel, deceased.

The amendment further avers that Palestine Teel sets up claim to the money and property described in the original bill and in the bill as amended, and avers that A. J. Teel disposed of the cotton, money and certain property referred to in the bill as amended with the aid and consent of Palestine Teel, and divided the same with his sister, Tidy, *alias* Vashti Pennington.

The bill as amended seeks to have the property and money referred to decreed to be the property of Arnold Teel and seeks a cancellation of a claim of Palestine Teel to said money and property, and prays that she and her property be held to account for and be charged with such amounts and property as she has taken or disposed of.

The bill also seeks a personal decree against the respondents, A. L. Teel and Mrs. Pennington, for the money and property alleged to have been used and converted by them to their own use, and it is prayed that a lien be declared on the property remaining, and that the same be sold and that their interest in it be applied to the payment of complainant for her share of the property disposed of or converted. There was a general prayer for relief.

The respondents demurred to the bill of complaint, as amended. A decree was rendered in the chancery court overruling the demurrer. From this decree the respond-

ents appeal, and the decree overruling the demurrer was affirmed.—*Teel et al v. Chancellor,* 117 Ala. 612.

The respondents, A. L. Teel and Palestine Teel, answered the bill of complaint as amended, by making the answer filed to the original bill a part of their answers respectively to the bill of complaint, as amended. In their answer to the bill as amended, the respondents specifically deny that Palestine Teel removed or aided in or authorized or consented to the removal, taking, using or conversion by A. L. Teel and Tidy Pennington, or her husband, T. J. Pennington, or either of them, any of the cotton, money or other property referred to or described in the bill of complaint, as amended. The answer of Palestine Teel further alleges that said money, cotton and other property belonged to her; that the cotton, corn, fodder and other produce on the place at the time of Arnold Teel's death was raised upon her land and was her property, and that the money on hand in the iron safe and trunk at the time of Arnold Teel's death, was the proceeds of cotton or crops raised upon her land and was hers. The answer alleges further that subsequent to the execution of the deeds marked exhibits "A" and "B" to the answer of Arnold Teel as filed to the original bill, Arnold Teel, deceased, lived in the house for the most of the time with her and her husband, and, that what he did on the lands, and in looking after the crops and stock on said lands and in selling or buying any property, taken from or brought upon the lands, was done by said Arnold Teel as her agent for her.

The cause was submitted on pleadings and proof for final decree. The presiding chancellor rendered a decree and made an order of reference with directions to the register. The register, in conformity with said order, held a reference and made a report in which he decided that the property involved in the litigation was owned by Palestine Teel, and that none of said property belonged to the estate of Arnold Teel, deceased. The complainant filed exceptions to the register's report. The report was read on the 7th of August, 1900, and ordered to lie over for one day. On August 8th, 1900, the cause was submitted on complainant's exceptions to the regis-

ter's report, and for final decree on the pleadings and proof and held for decree in vacation. A final decree was rendered on February 14th, 1902, by Hon. A. H. Alston, as chancellor, confirming the report of the register and dismissing the bill. From this decree the plaintiff appeals, and assigns the rendition thereof as error.

HUBBARD & HUBBARD, for appellant.—The recording of the deed signed by Arnold is not conclusive of a delivery—the circumstances above explain it—and would even amount to a repudiation or refusal of it.—*Alexander v. Alexander,* 71 Ala. 295.

The rule is not even universal that the crops follow the land; in ejectment recovery the crops go with the land; one who holds adversely and gathers the crop takes it as his own. A growing crop, did not the Code prohibit it, could be levied on under execution and sold, without levy on the land, the wife can give away the crops, and the presumption is she does, under such a deed.—See *McKenzie & Son v. Lambert,* 31 Ala. 526; Code 1896, § 1891; 73 Ala. 123; 29 Ala. 247; 60 Ala. 380.

R. L. HARMON, *contra.*—The signing, acknowledgment and filing of record of a deed of itself constituted a delivery to the guarantee.—*Elston v. Comer,* 108 Ala. 76; *Gulf R. C. Co. v. Mickel,* 308, 469. On page 77 of the opinion, McClellan, C. J., says: "Taking the evidence of the plaintiff on the question of the delivery of the deed by her father to her to show no more than that after due signature and attestation of the paper it was filed by the grantor in the probate office for record—and it certainly shows this much—that constituted a legal and efficacious delivery completing the execution of the deed.—*Elsberry v. Boykin,* 65 Ala. 336"; *Land Company v. Neill,* 87 Ala. 158; *Wells v. Mortgage Company,* 109 Ala. 430, 443; *Elsberry v. Boykin,* 65 Ala. 336.

(2.) There can be no question or doubt about the fact that the title to this land vested in Palestine Teel as between herself and Arnold Teel by virtue of the deed

from Arnold Teel to her, dated February 23, 1882. *Glover v. Walker,* 107 Ala. 540.

It is well settled under the state of facts of this case, that all crops and proceeds of crops raised on the lands of Palestine Teel belonged to her.—See Vol. 8 Am. & Eng. Ency. Law (2d ed.) pp. 303, 329, with notes to these pages and authorities there cited.

HARALSON, J.—1.· ·The evidence shows without conflict that Arnold Teel, by deeds made by him, and which he caused to be made to her, conveyed all the lands he owned to Palestine Teel, the wife of his son A. L. Teel, and also personal property thereon, which it is averred was all the property he owned. The complainant denies that these deeds were ever deliverd by Arnold Teel to said Palestine. The evidence, however, does not support this contention. They appear to have been legally executed, and were each, after execution, recorded in the office of the probate court. The deed from said Arnold to Palestine Teel covering all the lands, bore date the 23d of February, 1882, and was attested by two witnesses, and duly acknowledged by the grantor on the day of its execution, and was filed for record and recorded on the 25th of March of the same year. These facts constituted a delivery.—*Elston v. Comer,* 108 Ala. 76; *Gulf Red Cedar Company v. O'Neal,* 131 Ala. 117.

In addition to this, the evidence shows that each of the deeds were delivered by the grantor to the said Palestine. She swears positively to the fact that she had possession of them in 1881, or 1882, and kept them five or six years in her trunk, or may be longer.

Mrs. Chadwick, the daughter of Palestine, testified that in 1884 or 1885, she saw the deeds a good many times, in the trunk of her mother, and that she gave them to her father, Arnold Teel, to keep for her in a safe place, as she did not have such a place in which to keep them, and he put them in an iron safe. Moreover, it was shown by other witnesses that they had several times heard Arnold Teel say, after the execution of said deed, that he had given everything he had to Palestine Teel and her children. After he had given her his prop-

erty, he lived with her and her husband on the land, and looked after the place for Palestine, until his death in 1894, and had no business of his own or property to attend to. The evidence is fully convincing, as was held by the chancellor, that the deeds were delivered, and that the legal title to the property conveyed was, at the death of Arnold Teel, in Palestine Teel. It is not pretended or attempted to be shown, that after the conveyance of this property to said Palestine, she ever reconveyed the same to said Arnold. Such possession and control of the lands as said Arnold exercised during his life, under these conditions, will be referred to the legal title, and any right or advantage springing from his possession enured to the benefit of Palestine.—*Scruggs v. Decatur M. & L. Co.*, 86 Ala. 173; *Duncan v. Williams*, 89 Ala. 341, 351; *Harper v. Rudd*, 89 Ala. 371, 373.

2. It seems to have been agreeable to Palestine, and it certainly was to her advantage, for Arnold to manage and superintend the lands for her. It appears that her husband was dissipated and not well calculated to give proper management to the property of his wife; and Arnold, in conveying the property to her, excluded him from the control. It was natural and becoming for Palestine to repose the utmost confidence in her benefactor, and commit the management of her affairs to him, with unquestioning trust. He raised and disposed of the crops, and acted as if the property belonged to him, all the while admitting her ownership. In this nothing can be found to her disadvantage.

3. As to the crops raised on the land, it may be said, that the general rule of the common law is, that crops form a part of the real estate to which they are attached. The proceeds of crops raised on these lands, under the conditions mentioned belonged to Palestine.—8 Am. & Eng. Ency. Law (2d ed.) 303, 329 and notes; *Carlisle v. Killebrew*, 89 Ala. 332.

The evidence was clear that said Arnold raised no crops except on the lands of said Palestine, and that he rented from her no part of the lands, and never pretended that he was not acting for her.

[Chancellor v. Teel, *et al.*]

4. The court ordered a reference to the register to ascertain and report the money that said Arnold had when he died, if any, and the value of all property which he owned at the time of his death, which was received, wasted, and destroyed by the defendants or any of them. The evidence for the complainant tended to show that the deceased had money and property when he died, which was not included in his deed to said Palestine; but that for the defendants tended to show that all the money on hand at his death, and all other personal property on the lands was the property of said Palestine, derived from or acquired by the proceeds of the crops raised on the land which belonged to her, and that the title to all that property belonged to her, and the register so found and reported. Exceptions were filed by the complainant to the report of the register. On final decree the report was confirmed, and it was decreed that complainant was entitled to no relief.

These conclusions of the register were drawn not only from the depositions of witnesses, but also from the oral examination of witnesses before him. The same weight and effect ought to be accorded to his findings, which would be given to the verdict of a jury. If from the whole evidence it is a matter of doubt whether the finding was correct, or if different impartial and intelligent persons might entertain different opinions as to the matter, the findings ought not, for such reason, to be disturbed.—*Vaughn v. Smith*, 69 Ala. 92; *McQueen v. Whetstone*, 127 Ala. 418; *Pollard v. Mortgage Co.*, 139 Ala. 183, 200, 201.

We are unable to conclude that the register was incorrect in his findings, and that the court erred in confirming his report.

Affirmed.

McClellan, C. J., Dowdell and Denson, J.J., concurring.