(87 South. 539)

CHANDLER v. POPE. (7 Div. 82.)

(Supreme Court of Alabama. Nov. 25, 1920.)

1. **Adverse possession 63(2)—Grantor who remains in possession, however long, presumptively a tenant at sufferance.**

A grantor remaining in possession is presumptively but a tenant at sufferance of the grantee, and the fact the possession has continued over a period of 20 years does not alter the rule, nor does the fact that the grantor paid taxes.

2. **Adverse possession 63(4)—Grantor remaining in possession may become adverse holder as against grantee.**

The grantor of land remaining in possession may become an adverse holder as against the grantee, and thereby acquire the title; but he must disclaim holding for the grantee, and openly assert his own title in hostility to that claimed under his previous deed.

3. **Adverse possession 115(5)—Evidence held insufficient to take to jury question of adverse possession brought home to defendant's grantee.**

In statutory ejectment against a defendant claiming title by adverse possession, evidence offered by defendant *held* insufficient to take to the jury the question of adverse possession in defendant and hostility of title brought home to defendant's grantee, from whom plaintiff acquired title.

4. **Appeal and error 1029—Errors affecting defendant harmless, where affirmative charge for plaintiff justified.**

Where the trial court would have been justified in giving the affirmative charge in favor

of plaintiff, if there were errors committed affecting defendant's theoretical rights, they were matters of which he could not complain, and are without injury.

5. **Tenancy in common 39—Single tenant, as against stranger, may recover whole property.**

As against a stranger in possession of the property, a tenant in common is entitled to the whole property, and may recover the whole in ejectment.

Appeal from Circuit Court, Etowah County; O. A. Steele, Judge.

Ejectment by J. W. Pope against Laura C. Chandler. Judgment for plaintiff, and defendant appeals. Affirmed.

Thomas H. Stevens and P. E. Culli, both of Gadsden, for appellant.

Being the widow of Brewster Chandler, Laura Chandler had the right to retain the land. Section 3824, Code 1907; 139 Ala. 270, 35 South. 883. The warranties in the three deeds do not bind the appellant. Section 3824, Code 1907. She was therefore entitled to hold an eighth interest in the land sued for, and the court invaded the province of the jury in oral charge on the effect of the evidence. 111 Ala. 579, 20 South. 622; 129 Ala. 192, 29 South. 800; section 5362, Code 1907. The court erred in giving charge B. 130 Ala. 603, 30 South. 483; 128 Ala. 589, 29 South. 596; 155 Ala. 625, 47 South. 103. She was entitled to the land by prescription. 171 Ala. 550, 54 South. 685; 91 Ala. 245, 6 South. 46, 9 South. 265, 24 Am. St. Rep. 894; 85 Ala. 511, 5 South. 89; 32 Ala. 88, 70 Am. Dec. 529. Counsel discuss other charges, but in view of the opinion it is not deemed necessary to here set them out.

Motley & Motley, of Gadsden, for appellee.

Both claim title through Brewster Chandler, and appellant cannot set up title in Mrs. Melton, who is a stranger to this suit. 120 Ala. 438, 24 South. 888; Claiming through her husband, she is bound by his warranty. 10 N. J. Law, 102; 19 C. J. 1062; 120 Ala. 438, 24 South. 888. The burden was on the defendant to show with certainty the boundaries of his possession. 153 Ala. 493, 45 South. 159. Charge D was proper. 101 Ala. 234, 13 South. 311.

GARDNER, J. Statutory action of ejectment for the recovery of 120 acres of land brought by appellee against appellant, resulting in verdict and judgment for the plaintiff, from which this appeal is prosecuted.

The plaintiff offered in evidence a deed from one Nanny Dill, conveying a life estate to Joel and Sarah Chandler in 160 acres of land, under date of May 11, 1860, with remainder vested in Julia Ann, Melissa, Wil-

liam, and Brewster Chandler, children of said Joel and Sarah Chandler. After the death of the life tenants there was a division of the 160 acres by these brothers and sisters, Brewster Chandler being deeded the 40 acres upon which he resided, and deeds were executed the others as to the separate 40's. In this division Brewster Chandler and his wife, Laura C. Chandler, executed deeds, duly acknowledged, to the 120 acres here involved, which adjoined that upon which Brewster Chandler was residing, and upon the conveyances from these grantees the plaintiff rests his title.

Laura C. Chandler, appellant here, is the widow of Brewster Chandler, who died in 1915, and her only defense to this action is upon the doctrine of adverse possession and prescription, relying upon the possession of her husband for more than 20 years. The proof in her behalf tended to show that she and her husband had resided upon the 40 acres of land which belonged to him (and not here in controversy) for more than 20 years after the execution of these deeds, and that he cultivated a portion of the three 40's adjoining, and paid the taxes thereon each year. Melissa Chandler, a sister of Brewster Chandler, lived with him for more than 10 years, and another sister, Mrs. Melton, a widow, who claimed no interest in any of the land, was placed on Melissa's 40, where she remained for more than 20 years, cultivating a portion of that 40 as well as some of the others. She paid no rent to any one, and none was demanded. The defendant testified that she did not think her husband did any clearing on the land after the death of the life tenants, and no improvements appear to have been made by him upon the land. Defendant further testified that she "reckon" her husband claimed the land; that he called it his and took care of it, but she never heard him tell any of the others that he was claiming it, nor did she ever tell them anything to that effect. The evidence further shows that the presence of Mrs. Melton upon the land was merely to give her assistance by the others and was a matter of family convenience. The defendant also testified that none of the others had anything to do with the land, and on some occasions a portion of these 40's was rented out—her husband collecting the rent. The defendant acknowledged the execution of these deeds "dividing up this land"—to use her language—recalling the transaction distinctly.

We think the foregoing comprises the substance of the evidence as to adverse possession relied upon by defendant in this cause. The law governing cases of this character is well stated in the following quotation found in Yancey v. Savannah & West. Ry. Co., 101 Ala. 234, 13 South. 311, which has found frequent repetition in subsequent decisions of this court:

"By the execution and delivery of a deed of land the entire legal interest in the premises becomes vested in the grantee, and if the grantor continues in possession afterwards, his possession is not that of owner, but of a tenant of the grantee. He will be regarded as holding the premises in subserviency to his grantee, and nothing short of an explicit disclaimer of such a relation and a notorious assertion of right in himself, will be sufficient to change the character of his possession, and render it adverse to the grantee."

[1] A grantor remaining in possession is presumptively but a tenant at sufferance of the grantee. Daniels v. Williams, 177 Ala. 140, 58 South. 419. See, also, Abbett v. Page, 92 Ala. 571, 9 South. 332; Williams v. Higgins, 69 Ala. 517; Wells v. Sheerer, 78 Ala. 142; Gewin v. Shields, 187 Ala. 153, 65 South. 769. And the fact that the possession has continued over a period of 20 years does not alter this rule, for, as said by the New York court in Jackson v. Burton, 1 Wend. (N. Y.) 341:

"Although the defendant remained in possession after the conveyance, it was not as owner, but as tenant to his grantee, and nothing but a clear, unequivocal, and notorious disclaimer of the title of his landlord could render his possession, however long continued, adverse."

So it has also been held that the mere fact that the grantor paid taxes on the land does not affect the rule. 2 Corp. Jur. 146.

[2] It is, of course, well recognized that the grantor remaining in possession may become an adverse holder as against the grantee and thereby acquire the title. Mayhan v. Smith, 151 Ala. 482, 44 South. 375. But, as said in Garst v. Brutsche, 129 Iowa, 501, 105 N. W. 452:

"Generally speaking, he must disclaim holding for the grantee, and openly assert his own title in hostility to the title claimed under his previous deed. Express notice does not seem to be necessary, but there must be such acts of repudiation of the relationship as to bring home to the grantee knowledge of the fact that a disclaimer is made."

And again by the Pennsylvania court in Ingles v. Ingles, 150 Pa. 397, 24 Atl. 677:

"If he wishes to change the character of the possession, he must manifest his intention by some act of hostility to the title of his vendee, plainly indicating to the latter the intention to deny his right, and to hold adversely to it."

Attention is also directed to the discussion found in Wells v. Sheerer, supra, upon a question of adverse possession in cases of this character and sufficiency of the notice thereof brought home to the grantee.

The Ingles Case, supra, finds peculiar application to the facts as here presented on account of the relationship of the parties.

Here they were brothers and sisters, and a widowed sister claiming no interest in the land is permitted to reside without the payment of any rent for more than 20 years upon one of these 40's, cultivating a portion of all three. In that case the relationship was that of father and son, and the court held that the rule above stated applied with special force under such circumstances, saying:

"In such instances it is not unusual for the vendee to leave the vendor in possession for an indefinite period, or for life. Such transactions are often arrangements to suit the family convenience."

See, also, Kern v. Howell, 180 Pa. 315, 36 Atl. 872, 57 Am. St. Rep. 641; Milnes v. Van Gilder, 197 Pa. 347, 47 Atl. 197, 80 Am. St. Rep. 828.

It therefore appears from the foregoing authorities that under the circumstances here presented much stronger proof is required as to adverse possession than is ordinarily presented by such defense. The case seems to have been tried largely upon the theory that there was really no distinction, and the issues of adverse possession were submitted to a jury, and a verdict rendered for the defendant.

[3, 4] We think, in view of the principle recognized in the authorities cited above, no discussion is required to disclose that the evidence offered by the defendant was entirely insufficient for submission to the jury of the question of adverse possession and hostility of title, brought home to the grantee from whom the plaintiff acquired his title, and that under these facts the trial court would have been fully justified in giving the affirmative charge in favor of the plaintiff. Such being the situation, if there were any errors committed, they were matters of which the defendant could not complain, and therefore were without injury.

[5] It appears that Julia Ann Chandler, one of the remaindermen under the Dill deed of 1860, died before the life tenants, leaving neither husband or children, and that her sister Mrs. Melton inherited a sixteenth interest in the land here in controversy. Plaintiff recovered a judgment for the land only—no damages being assessed—and counsel for appellant lay much stress upon the foregoing facts as to the interest of Mrs. Melton, and insist that there was error in permitting a judgment for the entire interest in the land. The defendant did not claim as tenant in common with the plaintiff, but was a stranger to his deed; therefore, should it be conceded that the plaintiff was a tenant in common with Mrs. Melton, yet, as against the defendant, a stranger in possession, he is entitled to the whole property and may recover the whole in ejectment. This is well established by our decisions. Reichert v. Sheip, 204 Ala. 86, 85 South. 267. This argument is therefore without merit.

It results that the judgment will be affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.