88 So.2d 868

**L. L. WALKER**

v.

**D. R. COLEY, Jr.**

**I Div. 651.**

Supreme Court of Alabama.

June 21, 1956.

494

Caffey, Gallalee & Caffey, Mobile, for appellant.

D. R. Coley, Jr., Mobile, for appellee.

PER CURIAM.

This is an action of ejectment by appellant against appellee for the recovery of two tracts of land, one of which is approximately 60 acres and is referred to in the complaint as Parcel A, and the other tract of approximately 20 acres is referred to as Parcel B. The trial was had with a jury and a verdict returned for defendant (appellee) with judgment rendered accordingly.

The two tracts are in the South half of Section 38, Township 4 S, Range 2 W by virtue of an irregular survey of that area. This South half of Section 38 is bounded on the west by Sections 27 and 34, so that if the line between Sections 27 and 34 extended east it would lie about the middle of the South half of Section 38.

The title extends back to possession by Margaret Logan, a Negro woman, who lived on the 60-acre tract. That tract is 2,000 feet east and west by 1,371 feet north and south. The south line of it is what would be the extended section line between Sections 27 and 34. The smaller tract is south of and adjoins the larger, being 10 chains (660 feet) east and west by 18 chains (1,188 feet) north and south. Margaret Logan lived on the 60-acre tract for many years prior to March 14, 1914. James Richardson lived in Section 27 adjoining the 60-acre tract on the west.

On March 14, 1914 Margaret Logan executed a deed conveying Parcel A, the 60-acre tract, to James Richardson. Mr. Richardson never had a deed covering the 20-acre tract, Parcel B. But the evidence tends to show that in 1916 he took possession of both tracts. The land was unimproved. There were some trees and bushes on it, and in the main it was unsuitable for cultivation. Richardson fenced both tracts in a pasture in 1916, and cut wood for charcoal and stovewood, and so used it for over 20 years. No one else had possession during that time, except as here shown.

Foster and Lowder of Mobile were realtors and had a power of attorney from one Boruff who lived elsewhere. They seem to have had control of the land east of said 60-acre tract and in the same section. They had an agreement with Richardson, expressed by him as follows:

"A. Well, they bought some property east of me there, you see right east of what I bought from Margaret Logan. Then we all got connected together that way, and they were going to furnish the title for it, and I took their possession, and they furnished the line, and I furnished the fencing and fenced up the east half of it. * * *

"A. Well, that was mine. I bought that from Margaret Logan. If they perfected the title to it all I was going to give them a half interest in that what I bought from Margaret Logan, if they quieted the title to it.

"Q. Was that the reason for your making that conveyance? A. Yes, that was the reason for my making the conveyance.

"Q. Did they pay you anything at all? * * * A. No money transaction. * * *

"(Mr. Coley):

"Q. Now, Jim, did you claim that land as your own all of that time? A. I did.

"Q. Did anybody else ever assert or claim any right to it? A. No, nobody ever claimed any right to it.

"Q. Did Mr. Lowder ever claim any right to it? A. No, he didn't never claim no right. You understand, I tried to get him to take it all over and quiet the title, so I could give him a half interest in it, or he give it to me, either way, but, you know, the east part he bought from Broadus and them.

"Q. The east part, that is between that and Azalea Road, he was claiming that? A. That is right.

"Q. This part back there was yours and you claimed possession of it? A. That is right.

"Q. And he never claimed any right under that deed? * * *

"Q. Did he, or not, ever claim any rights under that deed? Did Mr. Lowder or anybody else ever claim any rights under that deed? A. No, they couldn't claim no rights. They never did fix the title, so they had no rights to it. * * *

"Q. Did I understand you to say you never had had anything to do with Mr. Boruff? A. No, sir, nothing only Foster & Lowder took me and my wife over there on St. Francis Street, and he must have been before a notary public and fixed them papers up, you know.

"Q. That is all you know? A. That is all I know.

"Q. That is all you know of Mr. Boruff? A. That is right.

"Q. And from 1919 then until you sold Sam, Mr. Lowder had never claimed anything? A. No.

"Q. Mr. Boruff never claimed anything? A. No. * * *

"Q. Now, did anybody else during that entire time interfere with you in the possession of that property in any way at all? A. Nobody at all."

As a part of that agreement Richardson executed a deed to Boruff dated December 4, 1919 conveying both Parcels A and B, which deed recited a consideration of $1. That is the first muniment of title covering Parcel B. Richardson further testified that there was no money consideration. The deed also contained the tract east of the 60 acres, referred to above and not here involved, which Richardson did not claim. On July 15, 1932 Boruff (by attorney in fact) conveyed both Parcels A and B, together with other land, to Bertha H. Stephens: the deed expressing a consideration of $100. On October 8, 1937 Bertha H. Stephens conveyed to Kate Lowder both Parcels A and B and the other land lying east of it for a consideration of $1 and other valuable consideration.

On January 3, 1950 Kate Lowder conveyed to A. B. Case the entire South half of Section 38, which includes Parcels A and B and the other tract referred to above for a consideration of $25.

On February 28, 1952 A. B. Case conveyed to L. L. Walker (this plaintiff) Parcels A and B for a named consideration of $1 and to replace a lost deed. There is evidence that none of these parties ever had possession of Parcel A or B, and that no claim of any kind was ever asserted by Boruff, Stephens or Lowder.

### Parcel B.

Plaintiff's claim is dependent upon James Richardson who never had color of title to Parcel B. But defendant also claims under James Richardson. There is evidence that in 1916 James Richardson took possession of Parcel B along with Parcel A, although he had a deed which only covered Parcel A. Although Parcel B was included in his deed to Boruff in 1919 Richardson continued in possession without interruption or dispute until he sold it to his nephew Samuel Richardson. Samuel Richardson had taken possession several years prior to July 23, 1934 (about 1929) when he received a deed from James Richardson. Samuel Richardson built a house and lived on the land and finished paying for it when he received his deed. He sold to defendant in 1946, and defendant has been in uninterrupted possession of it since then.

### Parcel A.

As to Parcel A, James Richardson had possession of it without interruption or

dispute until March 7, 1944, when he sold and conveyed it to his nephew Samuel Richardson and put him in possession. Samuel Richardson continued in the uninterrupted possession until he sold it, along with Parcel B, to defendant and made a deed to him on September 6, 1946; and defendant has had the uninterrupted possession since then.

■ It will be observed as to Parcel A that Samuel Richardson bought and went into possession of it less than ten years before this suit was begun on September 23, 1953. But there is evidence that James Richardson had a deed from Margaret Logan in 1914, and that she was in possession of the tract then, and that he had possession since that time or until 1944 when he sold it to his nephew Samuel Richardson. As to Parcel B the evidence tends to show that Samuel Richardson and defendant had adverse possession tacked together, both under recorded color of title, more than ten years before the suit was begun. That is sufficient to support a verdict for defendant as to Parcel B under section 828 (adverse possession), Title 7, Code.

In respect to Parcel A, it is necessary to consider some appropriate principles of law with reference to possession by a grantor after the execution of a deed. The general rule relied upon by appellant is thus stated by our cases:

"It is the well-settled rule that by the execution and delivery of a deed the entire interest vests in the grantee, and, if the grantor continues in possession afterward, his possession will be that either of tenant or trustee of the grantee. He will be regarded as holding the premises in subserviency to the grantee, and nothing short of an explicit disclaimer of such relation and a notorious assertion of right in himself will be sufficient to change the character of his possession and render it adverse to the grantee. 2 C. J. 143; Daniels v. Williams, 177 Ala. 140, 58 So. 419; Chancellor v. Teel,

141 Ala. 634, 37 So. 665; Ivey v. Beddingfield, 107 Ala. 616, 18 So. 139." Alabama Power Co. v. Rodgers, 222 Ala. 571, 573, 133 So. 584, 586.

■ There is another principle which is here material and is stated as follows in Findlay v. Hardwick, 230 Ala. 197, 160 So. 336, 340: "Under the doctrine of prescription, the law conclusively presumes that * * * was the owner in fee, and this presumption precludes all judicial inquiry into her title." Citing Kidd v. Borum, 181 Ala. 144, 161, 61 So. 100; Moore v. Elliott, 217 Ala. 339, 116 So. 346; Tharp v. Johnson, 219 Ala. 537, 122 So. 668. To the same effect is the case of Jackson v. Stephens, 251 Ala. 559, 39 So.2d 226. There are many other such cases. In Kidd v. Borum, supra, 181 Ala. at page 161, 61 So. at page 106, it is said: "This court has repeatedly held that the lapse of 20 years, without recognition of adversary right, or admission of liability, operates an absolute rule of repose."

In Case v. Conservation & Land Co., 256 Ala. 46, 49, 53 So.2d 562, 564, it is said:

"Complainant, of course, had no vendor's lien if the debt secured thereby had been paid and discharged. In Goodwyn v. Baldwin, 59 Ala. 127, 128, Justice Stone, writing for the court, said: 'In McArthur v. Carrie's Adm'r, 32 Ala. 75 (70 Am.Dec. 529), the question of lapse of time and long acquiescence was pretty fully considered. Many authorities were cited, and some of them commented on. The principle then asserted has been followed, and has become a rule of decision in this court. See Austin v. Jordan, 35 Ala. 642; Coyle v. Wilkins, 57 Ala. 108. The substance of the principle is, that if parties allow twenty years to elapse without taking any steps to compel a settlement, or to assert rights of property, the presumption of payment, or settlement of the disputed title arises. We have no disposition to re-examine the grounds on which that principle rests.'

"This rule has been followed in many of our cases. Some of them are: Philippi v. Philippi, 61 Ala. 41; Garrett v. Garrett, 69 Ala. 429; Solomon v. Solomon, 83 Ala. 394, 3 So. 679; Semple v. Glenn, 91 Ala. 245, 6 So. 46, 9 So. 265; Gay v. Fleming, 182 Ala. 511, 62 So. 523; Spencer v. Hurd, 201 Ala. 269, 77 So. 683, 1 A.L.R. 761; Graham v. Graham, 205 Ala. 644, 89 So. 25; Scott v. Scott, 202 Ala. 244, 80 So. 82; Oxford v. Estes, 229 Ala. 606, 158 So. 534; Wilkerson v. Wilkerson, 230 Ala. 567, 161 So. 820; Hendley v. First National Bank of Huntsville, 234 Ala. 535, 176 So. 348, on rehearing, 235 Ala. 664, 180 So. 667.

"In Snodgrass v. Snodgrass, 176 Ala. 276, 280–281, 58 So. 201, 202, it is said: 'the concensus of opinion in the present day is that such presumption is conclusive,' and quoting from an earlier case: ' * * * "the presumption rests not only on the want of diligence in asserting rights, but on the higher ground that it is necessary to suppress frauds, to avoid long dormant claims, which, it has been said, have often more of cruelty than of justice in them, that it conduces to peace of society and the happiness of families, 'and relieves courts from the necessity of adjudicating rights so obscured by the lapse of time and the accidents of life that the attainment of truth and justice is next to impossible.' " ' "

■ There is evidence from which the jury could find that neither Boruff, the grantee of Richardson, nor his successor Bertha Stephens or Kate Lowder, have asserted claim or right to either tract of land, nor paid substantial value for it, nor paid taxes on it, nor sought possession of it or benefits from it, nor have done any act showing an assertion of claim so far as known to James Richardson the grantor, or the public, for a period of 20 years or more; and that James Richardson and his successors have had the open, notorious, exclusive possession for a period of 20 years or more after he made a deed to Boruff in 1919, and without recognition of the title of his grantee or successors. If the jury found those to be the facts, Richardson's possession is not presumed to be subordinate to and in recognition of the rights of Boruff and his successors for he would not be bound for 20 years by a presumption of subserviency. See, Miller v. Vizzard Inv. Co., 195 Ala. 467, 70 So. 639; Snodgrass v. Snodgrass, supra; Kidd v. Borum, supra; Scott v. Scott, 202 Ala. 244, 80 So. 82; Jones v. Rutledge, 202 Ala. 213, 80 So. 35; Staten v. Shumate, 243 Ala. 261, 9 So.2d 751.

We observe in that connection that section 828 (Adverse Possession) Title 7, Code, does not apply to the prescriptive period of 20 years. Alford v. Rodgers, 242 Ala. 370, 6 So.2d 409; Jones v. Rutledge, supra. We think the Court overlooked those principles in applying the presumption of subserviency to the prescriptive period in Chandler v. Pope, 205 Ala. 49, 87 So. 539. The cases there cited apply the principle of subserviency where the possession has extended for many years (more or less than 20), and on the same theory as under the statute or 10 years; but there is nothing to indicate that in the states mentioned the courts go the length we do in applying the 20-year period of prescription. All of the states do not observe it. See 2 C.J.S., Adverse Possession § 232(2) p. 880. But as pointed out above, for a long time we have applied very strictly and firmly that principle as shown by our cases cited supra. The 20-year period would have little purpose if the same requirements of adverse possession applied to it as to the 10-year preiod. We think the Chandler case, supra, failed to observe the full force of our cases in that respect and should not be considered as expressive of the correct principle.

■■ There is another reason why the presumption of subserviency is not here controlling. That presumption obtains "only between the grantor * * * and the grantee * * * and not the latter's

grantee * * *. It is observed of the rule that a grantor remaining in possession is presumptively but a tenant at the sufferance of the grantee named in the conveyance, and not by the sufferance of some other grantee." Gerald v. Hayes, 205 Ala. 105(5), 87 So. 351, 352; Findlay v. Hardwick, 230 Ala. 197(6), 160 So. 336.

 We have shown that Boruff was the grantee of James Richardson in 1919 of Parcels A and B; but that Richardson is shown to have retained the possession. Boruff conveyed both parcels to Bertha Stephens on July 15, 1932: she conveyed to Kate Lowder on October 8, 1937, who later conveyed to Case and he to plaintiff Walker. After July 15, 1932 there was no presumption that Richardson had possession at the sufferance of Bertha Stephens or her successors. They were not his grantees. So that if we were inclined to apply that presumption to the 20-year period, it would not be here controlling because the jury could have found that Richardson and those claiming under him, including this defendant, have had possession of both tracts, respectively, for more than 20 years after July 15, 1932 and before this suit was begun on September 23, 1953. After Richardson's grantee sold to Stephens on July 15, 1932 the presumption had no standing. The jury were authorized to find that defendant had title to both tracts.

There was no error in refusing the affirmative charge requested by appellant and in overruling his motion for a new trial based on the insufficiency of the evidence.

 Assignments of error 2 and 16 are based on refused charge 4. Assignment No. 3 is based on refused charge 24. The trial court fully covered these charges in his general charge.

 Assignment No. 4 is based on the giving of charge 3 at the request of defendant. The charge could have been refused, but it was not error to give it. That comment also applies to given charge A, assignment of error No. 5.

 Assignment of error No. 17 is based on the refusal of charge 33. The court properly refused it. As a matter of law the burden of proof does not shift; but sometimes there is a duty to introduce proof of a certain sort. Evidently the charge sought to invoke that procedural rule, but it is not appropriately phrased in the charge. It also limits the better title of defendant to one which has resulted from a prior possession. It is confusing as to whether it eliminates a title acquired by adverse possession subsequent to the possession under which plaintiff claims. Defendant' is not thus limited by law.

We think the foregoing discussion is sufficient to support the conclusion that none of the assignments discussed by appellant show reversible error. Therefore, the judgment should be affirmed.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, § 32, Code, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, SIMPSON, STAKELY, GOODWYN, MERRILL and SPANN, JJ., concur.