This is an action to quiet title to land located in Washington County, Alabama. Plaintiffs (hereinafter "the Snow heirs") filed a statutory in rem action to quiet title, alleging they were the owners of a certain 240 acres of land in Washington County.
Defendants Boykin and Bentley counterclaimed in an inpersonam action to quiet title to certain of the disputed lands in them.
After taking testimony on various motions, the trial court heard the case on the merits, ore tenus. It entered its final judgment in favor of Boykin and Bentley on their counterclaim. Although the trial court did not specify the legal theory upon which its decision was based, the substance of the testimony elicited at trial was directed to the theory of adverse possession.
It is well settled that when it cannot be determined on what ground or theory judgment was rendered, the finding of the trier of fact is referred to the theory supported by the evidence. Holley v. Crow, 355 So.2d 1123 (Ala.Civ.App. 1978).
Also, we remain cognizant of the rule that in an action brought to quiet title to real property in which the evidence was heard ore tenus, the trial court's findings of fact should not be disturbed on appeal unless palpably erroneous or manifestly unjust. We find there was sufficient evidence to warrant a finding by the trial court that defendants Boykin and Bentley acquired title to the subject property under the rule of prescription and absolute repose. Therefore, we affirm.
 I.
In the year 1921, title to 240 acres of land in Washington County was vested in Milton Snow, Sr. He died intestate and left surviving eleven children.
Beginning, roughly in 1930, and continuing for sometime thereafter, R.M. Boykin, defendant Boykin's late husband, began acquiring the interests of the Snow heirs. Appellees, Boykin and Bentley contend that by 1947, R.M. Boykin had purchased all the interests of the Snow heirs and had gone into exclusive possession of the property conveyed to him.
In 1947, by warranty deed purporting to convey the fee, defendant Boykin and her husband, R.M. Boykin, conveyed a portion of the disputed lands to Dinah Snow Weaver. In 1948, the Boykins conveyed another portion of the disputed lands to Beanie Wilkerson, predecessor in title to Bentley. Mr. Boykin died in 1952, leaving the remainder of the disputed property to his widow, Mrs. Boykin.
Sometime after her husband's death, Mrs. Boykin discovered that several of the deeds to the Snow property were missing.
In an effort to prove the previous existence of those deeds, Boykin attempted to procure from certain of the Snow heirs, quit-claim deeds, only two of which she was able to obtain. Therefore, when suit was filed, there were no conveyances on record from York and Frank Snow to defendant Boykin's predecessor in title. Consequently, *Page 1212 
the heirs of York and Frank Snow are cotenants of record with Boykin and Bentley.
 II.
Under the doctrine of prescription, actual adverse possession of land for twenty years or more without recognition of adverse claim creates a conclusive presumption of title, and the law presumes the existence of all the necessary elements of adverse possession, or title, without full proof. Lay v. Phillips,276 Ala. 273, 161 So.2d 477 (1964); Barry v. Thomas, 273 Ala. 527,142 So.2d 918 (1926); Stearnes v. Woodall, 218 Ala. 128,117 So. 643 (1928). This presumption, created by prescription, precludes judicial inquiry into a title so acquired; thus the rule of prescription of twenty years is a rule of absolute repose. Walker v. Coley, 264 Ala. 492, 88 So.2d 868 (1956). The essence of this principle is that, if parties allow twenty years to elapse without taking steps to assert property rights, repose of the disputed title is presumed. We have carefully examined the evidence of record and opine that the weight and preponderance of that evidence supports the judgment below.
Reference to some of the significant evidence discloses that both Boykin's and Bentley's predecessors in title periodically turpentined, cut timber, and annually assessed and paid taxes on their respective tracts of the disputed property for more than twenty years. In addition to these acts of possession, both persons treated that property as their own. Beanie Wilkerson, Bentley's predecessor in title, actually resided on her tract, and Boykin, at times posted and executed oil and gas leases to her claimed tract. The appellees, or those through whom they claim, assessed and paid ad valorem taxes on their claimed tracts for more than twenty years.
Boykin had color of title to the property she claimed by virtue of a quit-claim deed given her in 1953 by Frank W. Boykin as a result of a contest of her husband's will. That will purported to devise her the fee to all of the disputed property. From that time forward, a period of more than twenty years, Boykin and Bentley's predecessor in title, Beanie Wilkerson, regularly assessed and paid ad valorem taxes on all the disputed property.
For certain, appellants became cognizant of Boykin's exclusive claim of ownership when she, having discovered that certain of the Snow deeds were missing, called upon appellants to provide deeds to replace those missing.
The record strongly imports, that for a period of more than twenty years, there was an exclusive claim of ownership by both Boykin and Bentley.
The case of Howard v. Harrell, 275 Ala. 454, 156 So.2d 140
(1963), is closely analogous. In Howard, the lands subject to litigation were owned, prior to the turn of the century, by three brothers, each of whom owned an undivided one-third interest in the property. Beginning in 1906, appellees' father in that case, and predecessor in title, Harrell, Sr., began acquiring fractional interests in the property; his acquisitions culminating in 1917, at which time he began to assert full and complete title to the lands. From 1917 until the filing of that suit in 1950, Harrell, Sr., followed by his sons, who succeeded to his claim upon his death in 1948, exercised complete control and dominion over the lands — renting, hunting, cutting timber, and assessing and paying taxes on the lands for more than thirty years. Id. at 455, 467, 156 So.2d 140. In 1948, after Harrell, Sr.'s title had been unquestioned for more than thirty years, appellant (Howard) conceived the idea that he had not effectively acquired the title to the property and proceeded to procure deeds from various heirs of the original three owners. This court affirmed the judgment of the trial court quieting the title to the suit property in the appellees (the Harrells) on the basis of rule of prescription and repose. Id. at 456, 156 So.2d 140.
The instant case is factually similar to Howard. In that case this court set forth its rationale applying the rule of prescription and repose: *Page 1213 
 "The case of Walker v. Coley, 264 Ala. 492, 88 So.2d 868, contains a comprehensive compilation of the Alabama case law on this subject. The court in that case quoted with approval the following excerpt from Kidd v. Borum, 181 Ala. 144, 61 So. 100:
 "`"* * * This court has repeatedly held that the lapse of 20 years, without recognition of adversary right, or admission of liability, operates an absolute rule of repose."'
 "The reason for this rule is explained, in part, by the court in the Walker case, supra, by quoting from Snodgrass v. Snodgrass, 176 Ala. 276, 280-281, 58 So. 201, 202, as follows:
 "`* * * The consensus of opinion in the present day is that such presumption is conclusive, * * *; and, as said in an early case, "the presumption rests not only on the want of diligence in asserting rights, but on the higher ground that it is necessary to suppress frauds, to avoid long dormant claims, which, it has been said, have often more of cruelty than of justice in them, that it conduces to peace of society and the happiness of families, `and relieves courts from the necessity of adjudicating rights so abscured by the lapse of time and the accidents of life that the attainment of truth and justice is next to impossible'" * * *.'
 The instant case illustrates the propriety and necessity of such a rule. [Citations omitted.]
 "The case of Allison v. Owens, 248 Ala. 412, 27 So.2d 785, is closely analogous to the instant case in many respects. In Allison v. Owens, supra, three sons of a mother who died intestate attempted to divide her realty between themselves but omitted a part of her land from the description of the divided property. One of the sons took possession of the omitted parcel of land and treated it as his own for 23 years without recognizing the rights of his brothers. This Court held that there was ample evidence to warrant a finding that the son in possession acquired an exclusive title to the land as against his contenants under the doctrine of prescription and repose.
 "Appellant relies on the line of cases which hold that the entry and possession of one tenant in common are presumed to be for the benefit of all the cotenants. [Citations omitted.] But an analysis of these cases reveals a restriction on the rule which appellant has failed to note; that is, that the presumption is indulged until such possession is rendered adverse by some act or declaration by the party in possession repudiating the interest of his contenants. Authorities, supra.
 "In the instant case, there is ample evidence to support a finding that the elder Harrell's acts worked a complete ouster of his cotenants. He treated the property as his own in every respect, at times renting all or part of the lands, cutting timber therefrom periodically, and assessed and paid taxes until his death. His two sons, the appellees here, treated the lands in the same manner after their father's death.
 "In this case, the evidence supports the finding and holding that the possession of appellees was so open and notorious in its exclusiveness as to put the other original tenants in common on notice. [Citations omitted.]
 "This opinion in no way impinges upon the principle that possession and use of the premises by one tenant in common will not, of itself, repel the presumption that the possession is that of all the tenants in common. [Citations omitted.]"
275 Ala. at 456-457, 156 So.2d 140.
On the basis of Howard, there is sufficient evidence in the record from which an ouster can reasonably be inferred in this case. Therefore, we cannot say the judgment below is plainly erroneous or manifestly unjust, therefore, that judgment is due to be affirmed.
 III.
The Snow heirs further contend the trial court erroneously admitted, over objections, the testimony of one Roosevelt *Page 1214 
Weaver concerning R.M. Boykin's source of title. One pertinent part of that testimony is:
 "Q. I asked you to tell us what Mr. Rob Boykin told you at the particular time that you were talking about, about buying the interests of the Snow heirs in the Milton Snow tract of land?
 "A. Yes, sir, he said he owned — bought all of them out but Beanie and Dinah."
C. Gamble, McElroy's Alabama Evidence 274.02 (3), states: "A statement by a possessor as to the source of his title is not admissible." In support of this proposition, McElroy cites inter alia Mid-State Homes, Inc. v. Johnson, 294 Ala. 59,311 So.2d 312 (1975), and Weston v. Weston, 269 Ala. 595,114 So.2d 898 (1959).
Clearly the question asked and the answer given are violative of the rule above stated. It is axiomatic, however, that this court will not reverse a judgment on appeal for any error unless it appears that the error complained of has probably injuriously affected substantial rights of the parties. Rule 45, ARAP. Our review of the record shows that, in light of other evidence presented in support of the rule of prescription and repose, this error is without injury and will not justify reversal. Rule 45, ARAP.
The Snow heirs further contend that Weaver's testimony that Frank Snow had told Weaver that he (i.e., Snow) did not claim an interest in the property, and had sold it to Boykin "to help pay his brother out of a whiskey case," was violative of the hearsay rule. This contention is untenable. The witness's testimony in this instance constitutes an exception to the hearsay rule. See C. Gamble, supra, §§ 180.01 (4), 363 n. 1, 274.02 (2), 612 n. 4. For the reasons stated, the judgment below is due to be and is hereby affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and ADAMS, JJ., concur.